Argued March 12; reversed July 8; rehearing denied
September 9, 1941

# WARREN ET AL. *v.* BEAN

(115 P. (2d) 167)

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK, RAND and ROSSMAN, Associate Justices.

*Alvin A. Kurtz,* of Salem (I. H. Van Winkle, Attorney General, Willis S. Moore, Assistant Attorney General, and Eugene E. Laird, of Myrtle Point, on the brief), for appellant.

*Willis West,* of Portland (Allison Moulton, of Medford, on the brief), for respondents.

RAND, J. The plaintiffs, a copartnership doing business in Medford, Oregon, under the name of City Transfer & Storage Company, applied to the Public Utilities Commissioner of Oregon for a permit to operate motor vehicles as a common carrier in the transportation of property anywhere for hire in the state of Oregon. A hearing thereon before the commissioner was then had and, from the evidence produced on said hearing, the commissioner, among other things, found that:

"That the evidence reveals that there are many common and contract carriers now operating in the territory proposed to be served by applicant who are now and have been operating at a small profit or a loss, and if additional transportation business is lost by them it would seriously impair their ability to adequately serve the public.

"From the foregoing the Commissioner finds and concludes that the granting of application herein and issuance of permit to applicant will result in the impairment of the ability of existing operators to adequately serve the public, and, therefore, the application should be denied.

"Based on the foregoing findings and conclusions and the Commissioner now being fully advised in the premises:

"IT IS THEREFORE ORDERED that the application of D. E. Warren and A. McClanahan dba City Transfer & Storage Company, Medford, Oregon, for permit to operate as a common motor carrier of property anywhere for hire in Oregon, be and it hereby is denied."

On motion of the plaintiffs, a rehearing was had and other evidence taken and, from the record then before him and the evidence offered upon the two hearings, the commissioner made additional findings which, so far as material, are as follows:

"1. That adequate transportation service is now being rendered beyond a three mile distance from the city limits of Medford and that the granting of permit applied for, as amended by applicants, will result in the impairment of the ability of existing operators to adequately serve the public;

"2. That the granting of permit restricted to transportation within three miles of the city limits of Medford, as rendered by the applicants prior to June 14, 1939, will not result in the impairment of the ability of existing operators to adequately serve the public;

"3. That the operation as proposed beyond three miles of the city limits of Medford is contrary to the public interest but that the operation restricted within said territory of three miles from the city limits of Medford is not contrary to the public interest; * * *".

Based on these later findings, the plaintiffs were granted a permit to operate beyond the city limits of Medford for a distance of three miles only and, in all other respects, their application was denied. Being dissatisfied therewith, the plaintiffs refused to accept the permit and brought suit in the circuit court for

Jackson county to set aside the order of the commissioner and prayed for a decree commanding him to issue a permit in accordance with their application. Additional testimony was then taken before the court and submitted to the commissioner and, after a consideration thereof, the commissioner made additional findings and stated the grounds for refusing to issue the permit as follows:

"It is the plain policy of the State to protect motor vehicle carriers for hire in territory already covered by them from ruinous competition, subject, of course, to the paramount interest of the public.

"That the granting of plaintiffs' application in the territory for which permit is requested will result in the impairment of the ability of the existing operators therein to adequately serve the public, that plaintiffs are not able or adequately equipped to perform the service proposed; that the operation proposed is contrary to the general welfare and public interest; that plaintiffs are not capable of conducting transportation service contemplated in compliance with the law and have been an habitual and an intentional violator of the law, which is detrimental to the guaranteeing, as far as possible, a wholesome policy in the transportation business in the territory sought to be served."

The whole matter was again submitted to the court for its consideration and, from the evidence, the court found, among other things, as follows:

"1. That the Findings and Conclusions denying to the plaintiffs a permit to operate as a common carrier by motor vehicle in the transportation of property anywhere for hire in the State of Oregon, restricted to service within, to and from a fifty road mile radius of Medford, Oregon, with no restrictions on the transportation of household goods and heavy machinery, are not supported by the law and the evidence.

"2. That said P.U.C. Oregon Order No. 7229 is void and should be declared vacated and set aside.

"3. That the granting of plaintiffs' application in the territory for which permit is requested will not result in the impairment of the ability of existing operators therein to adequately serve the public.

"4. That plaintiffs are able and adequately equipped to perform the service proposed. * * * ''

Based thereon, a decree was entered which set aside the commissioner's order and directed him "to immediately issue to the plaintiffs herein, a permit to operate as a common carrier by motor vehicle in the transportation of property anywhere for hire in the state of Oregon, restricted to service within, to and from a fifty-road-mile radius of Medford, Oregon, with no restrictions on the movement of household goods and heavy machinery''. From this decree, the commissioner has appealed.

The proceedings before the commissioner and the court are purely statutory and are controlled by the provisions of the motor transportation act of this state—sections 115-501 to 115-537, O. C. L. A. Section 115-511 confers upon the commissioner the power to issue permits for the operation intrastate of motor vehicles by common carriers and prescribes the standards and rules which the commissioner is to follow in the issuance of permits. It provides that:

"* * * The issuance of permits to common carriers who do not now own and hold permits as motor carriers under existing law shall, except as hereinafter provided, be made only after hearing had and showing made as required by the following subdivision 2 of this section * * *''.

The plaintiffs neither owned nor held permits as motor carriers under existing law at the time they made said application and, hence, would not come

within the exception. Subdivision 2, so far as material to this controversy, provides:

"* * * except where the applicant is a contract hauler as the term is defined by existing law and who operated as a contract hauler in 1934, the commissioner shall investigate the application and if the proposed operation is competitive with existing carriers and/or there is protest against the granting of permit, shall fix a time and place for a hearing thereon. * * *

"If the commissioner finds from the record and the evidence that:

"(a) The applicant, if an intrastate operator, is financially responsible and adequately· equipped to perform the service proposed; * * · *

"(c) That the operation proposed is not contrary to the public interest; * * *

"(e) That the granting of a permit will not result in the impairment of the ability of existing operators to adequately serve the public; * * *",

then he shall grant the permit, otherwise not.

■■ The plaintiffs were not contract haulers when they made their application, nor had they been engaged as such in 1934. Hence, under the plain provisions of this statute, it was the imperative duty of the commissioner to refuse to issue a permit to the plaintiffs to operate as common carriers in intrastate transportation of property when he found, from the evidence offered on these hearings, that the plaintiffs were not financially responsible and were not adequately equipped to perform the service and that their operation would be contrary to the public interest and would result in the impairment of the ability of those already engaged in that business to adequately serve the public. The obvious purpose of the statute requiring the commissioner to find that the applicant possessed such qualifications before issuing a permit

to such applicant was to avoid unnecessary duplication of equipment and to prevent ruinous competition between persons engaged in the business of intrastate motor common carriers.

It is contended, however, that, because of the provisions of section 115-504, O. C. L. A., the commissioner's refusal to issue a permit to the plaintiffs was unlawful in that it tended to create a monopoly. That statute provides:

"The business of operating as a motor carrier of persons or property for hire upon the highways of this state is declared to be a business affected with the public interest, and that it is contrary to public policy and public interest that monopoly or monopolistic practices in motor transportation be permitted. The rapid increase of motor carrier traffic, and the fact that under existing law many motor trucks, trailers and busses are not effectively regulated, have increased the dangers and hazards on public highways and make it imperative that more stringent regulations should be employed, to the end that the highways may be rendered safer for the use of the general public; that the wear of such highways may be reduced; that minimum of inconvenience to other users of the highways may be effected; that minimum hindrance and stoppage to other users of the highways compatible with the needs of the public for adequate transportation service, may be effected; that the highways may be safeguarded from improper or unnecessary usage; that operation by irresponsible persons or any other operation threatening the safety of the public or detrimental to the general welfare be prevented; that discrimination in rates charged may be eliminated; that congestion of traffic on the highways may be minimized; that the various transportation agencies of the state may be adjusted and correlated so that public highways may serve the best interest of the general public; that it is necessary that statutes be

passed to provide a method of assessing privilege taxes to enable the further construction of highways and to provide for the operation, preservation and maintenance of highways already built, and the legislature hereby declares that to effect the foregoing ends and purposes this statute is adopted; provided, however, that nothing in this act shall be construed as requiring or authorizing a compliance with, or an application of, any law or rule with respect to a certificate of public convenience and necessity as a condition to the granting of any permit authorized by this act.''

█ It appears from the evidence offered at said hearings that there were many intrastate motor common carriers engaged in the transportation of property who were operating at the time either at a very small profit or at a loss. Under such circumstances, it is unreasonable to contend that the refusal of the commissioner to issue a permit to the plaintiffs to engage in that business either created or tended to create a monopoly, or that, by reason of the public policy declared in that section, a permit should have been granted to the. plaintiffs, thereby adding one more competitor when, as found by the commissioner, there was already too much competition in that particular line of business. As was well said in *Seaboard Air Line R. Co. v. Wells*, 100 Fla. 1027, 130 So. 587:

''The right of a citizen to travel upon the highway and to transport his property in the ordinary course of life and business differs radically from the use of the public highway to conduct a private business for profit. There can be no doubt that the latter is not an inherent right. It is rather in the nature of a privilege or permission which can be granted or withheld by the state, or, when permitted, can be subjected to regulation and control by the state. The operation of such motor vehicle carriers for profit on the public

highways is a special use of them which tends to obstruct and impede ordinary traffic and requires additional construction, maintenance, and repairs of the highways at the expense of the public. This condition of affairs furnishes additional reasons for their regulation and control."

3 Pond on Public Utilities, 4th ed., section 775.

■■■ Plaintiffs argued that the findings of the court, which are diametrically opposed to those made by the commissioner, are conclusive upon this appeal. If the question involved was a judicial question, which it is not, and if this was an action at law and had been tried by the court without a jury, which is not the fact, then the rule invoked would apply. The commissioner is not a court and does not have jurisdiction to determine judicial questions. The determination of whether a permit shall be granted or refused is a legislative or administrative question and not a judicial question. Courts do not have jurisdiction to determine legislative or administrative questions and they can no more exercise that function than the commissioner can exercise judicial functions. Hence, a would-be carrier, seeking to set aside an order of the public utilities commissioner refusing to grant him a permit, must show by clear and satisfactory evidence that the order of the commissioner was not supported by substantial evidence or that, for some other reason, it is unlawful, unreasonable or unjustly discriminatory and, if he fails to make such a showing, the order must stand and is conclusive upon the courts. See *Oregon-Washington R. & N. Co. v. Corey*, 120 Or. 517, 524, 252 P. 955, and authorities there cited.

■ There is a marked distinction between the employment of judicial and legislative tribunals and no act

of either can be both judicial and legislative. See Cooley's Constitutional Limitations, 7 ed., p. 133. Had the order of the commissioner been made without a fair hearing and notice thereof, or if there had been no substantial evidence to support it, then the order would have been unreasonable and arbitrary and contrary to the due process clause of the federal constitution and a judicial question in respect to those matters would have been presented, over which the courts would have jurisdiction to pass. But none of those conditions existed in this case and, hence, there was no showing that the proceedings before the commissioner were unfair or that his orders were unreasonable or arbitrary and not supported by substantial evidence. For that reason, his findings, and not those of the court, are conclusive upon this appeal. As said in *St. Joseph Stock Yards Co. v. U. S.*, 298 U. S. 38, 51, 56 S. Ct. 720, 80 L. Ed. 1033:

"* * * The court does not sit as a board of revision to substitute its judgment for that of the legislature or its agents as to matters within the province of either. (Citing authorities.) When the legislature itself acts within the broad field of legislative discretion, its determinations are conclusive. When the legislature appoints an agent to act within that sphere of legislative authority, it may endow the agent with power to make findings of fact which are conclusive, provided the requirements of due process which are specially applicable to such an agency are met, as in according a fair hearing and acting upon evidence and not arbitrarily. (Citing authorities.) In such cases, the judicial inquiry into the facts goes no further than to ascertain whether there is evidence to support the findings, and the question of the weight of the evidence in determining issues of fact lies

with the legislative agency acting within its statutory authorty."

See also *Pacific Tel. & Tel. Co. v. Wallace*, 158 Or. 210, 75 P. (2d) 942.

Here, there was a fair hearing before the commissioner. There was evidence to support his findings and no violation by him in any respect of the due process clause. Hence, the court had no authority to substitute its judgment for that of the commissioner, and, for that reason, the decree appealed from must be reversed and the cause remanded with directions to dismiss the suit. It is so ordered.

BELT, J., did not participate in this opinion.