DICKINSON et al, *Respondents—Cross-Appellants,*
*v.*
DAVIS, *Appellant—Cross-Respondent.*
(No. 414-960, CA 5402)
552 P2d 1333

*Bruce R. DeBolt,* Assistant Attorney General, Salem, argued the cause for appellant—cross-respondent. With him on the briefs were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Glenn W. Toomey,* Seattle, argued the cause for

respondents—cross-appellants. On the brief was John R. Urquhart, Portland.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

THORNTON, J.

## THORNTON, J.

The state, through its Public Utility Commissioner (Commissioner), appeals from the decision of the circuit court which ruled that penalties in excess of $17,000 assessed against each plaintiff[1] were unreasonable and reduced the same to $5,725 each.

The plaintiffs cross-appeal contending that even the amounts to which the penalties were reduced by the circuit court are unreasonable and should be further reduced.

Plaintiff Dickinson has for some time operated an automobile parts delivery service in the Seattle area, delivering parts to retail outlets.

When the operator of a similar service in Portland was unable to continue his operation, Dickinson was contacted and asked if he was interested in conducting the Portland operation. Dickinson decided to do so and paid $5,000 for the customer list of his predecessor.

Dickinson did not apply for an Oregon Public Utility Commissioner's (PUC) permit as required. He testified that he did not do so because he first wanted to determine whether the operation could be profitable and because he knew that his predecessor had operated by leasing the permit of another trucking company.

In June of 1973 plaintiff Dickinson entered into a lease with plaintiff Woolwine Trucking Co. (Woolwine) to operate under its PUC permit. Although the exact details of the arrangement are unclear, it appears that Woolwine established a parts division which was to lease trucks from Dickinson for $126 per month. Dickinson was in turn to pay Woolwine $75 per month per truck for the use of Woolwine's PUC per-

---

[1]Dickinson and Woolwine Trucking Co., the plaintiffs herein, were the defendants in the original proceeding below brought by the Commissioner. Because their appeal from the action entailed the bringing of a new action in the circuit court, the defendants in the original action are the plaintiffs here and are referred to as such.

mit. Although Dickinson made the monthly payments to Woolwine, Woolwine apparently did not make the payments to Dickinson.

The drivers Dickinson needed to handle his operation were formally the employes of Woolwine, although they were under the supervision of one Dieterich who managed the Portland operation for Dickinson. The drivers were paid by Woolwine which included them as its employes for all tax withholding and reporting requirements.

In January of 1974 Dickinson applied for an Oregon PUC permit in his own name. During the application process the above dealings came to the Commissioner's attention and penalties of $22,900 ($100 per day for 229 days of operating without a permit) were assessed against plaintiff Dickinson, and a like amount against plaintiff Woolwine for aiding and abetting Dickinson.

The plaintiffs then admitted the violations, stipulated to certain facts and requested a mitigation hearing before the Commissioner pursuant to ORS 767.470(4)(a). After hearing evidence the Commissioner reduced the penalties against each plaintiff by 25 per cent to $17,175.

Plaintiffs, not being satisfied with this result, then brought the present action in circuit court pursuant to ORS 756.580 to have the order of the Commissioner set aside or modified. That section provides in subsection (1):

> "A party to any proceeding before the commissioner, when aggrieved by the findings of fact, conclusions of law or order, including the dismissal of any complaint or application by the commissioner, may prosecute a suit against the commissioner to modify, vacate or set aside such findings of fact, conclusions of law or order."

ORS 756.594 is also applicable and provides:

> "In any suit referred to in ORS 756.580, the burden of proof is upon the party seeking to modify, vacate or set aside findings of fact, conclusions of law or the order to show by clear and satisfactory evidence that the order is unreasonable or unlawful."

[ 288 ]

ORS 756.598 is also applicable and provides in relevant part:

"(1)  Court review of any findings of fact, conclusions of law or order referred to in ORS 756.580, shall be conducted by the court without a jury as a suit in equity but *the court shall not substitute its judgement for that of the commissioner as to any finding of fact supported by substantial evidence.* * *.* The court may affirm, modify, reverse or remand the order.

"(2)  * * *  In the case of a modification or reversal the court shall make special findings of fact based upon evidence in the record and conclusions of law indicating clearly all respects in which the commissioner's order is erroneous." (Emphasis supplied.)

The circuit court heard evidence on the circumstances surrounding the violations and concluded that the penalties assessed against the plaintiffs were unreasonable and reduced the penalty against each to $5,725.

On appeal the state argues that the circuit court's authority to set aside or modify a mitigation decision of the Commissioner is very limited, and that the circuit court may not alter such a decision unless it amounts to an abuse of discretion, or is based upon findings of fact not supported by the evidence.

On cross-appeal the plaintiffs argue that the order of the Commissioner imposing the penalties was unlawful in that the Commissioner has failed to promulgate rules prescribing the factors to be considered in mitigation proceedings. In support of this proposition they cite *Sun Ray Dairy v. OLCC,* 16 Or App 63, 517 P2d 289 (1973), *appeal after remand* 20 Or App 91, 530 P2d 887 (1975), where this court ruled that the Oregon Liquor Control Commission is required to promulgate rules setting out the standards by which applications for liquor licenses are evaluated.

Plaintiffs' reliance on *Sun Ray* I, 16 Or App 63, is misplaced. As noted that case dealt with standards for the issuance of a license; no penalty assessment proceedings were involved there. While *Sun Ray* I may

require the Commissioner to issue rules to delineate the standards by which applications for PUC permits are evaluated, that holding does not require the promulgation of rules in the situation before us here. *Cf., Gras v. Beechie,* 221 F Supp 422 (SD Tex 1963).

In *Pacific N.W. Bell v. Sabin,* 21 Or App 200, 214, 534 P2d 984, Sup Ct *review denied* (1975), we reinstated a rate decision of the Commissioner which the circuit court had modified under the identical statutory provisions at issue here. We stated:

"The plain import of these statutory provisions is that where a rate order is based upon 'substantial evidence' and violates no provision of either the Oregon or Federal Constitution a court is without authority to alter it in any way. They further suggest that where an increase in rates has been rejected because the petitioning utility has failed to meet its burden of providing evidence sufficient to show that expenditures relied upon as a basis for the increase are themselves 'reasonable,' (where conclusions pro and con are supported by evidence that has substance) the order of the Commissioner must be sustained as both reasonable and lawful.

"* * * [T]he scope of the circuit court's inquiry was properly limited to the questions of (1) whether the challenged disallowances were made in violation of some statutory limitation upon the Commissioner's authority to set rates, and (2) whether the Commissioner's decision to make those disallowances was supported by substantial evidence." *Pacific N.W. Bell v. Sabin,* supra at 214-15.

Proceedings of the Public Utility Commissioner are exempt from the provisions of the Administrative Procedures Act (APA). ORS 183.315. Such proceedings are instead covered in the chapters of the Oregon Revised Statutes dealing with public utility regulation, ORS ch 756 et seq.

Although the provision in ORS ch 756 giving the circuit court power to alter, modify, amend or rescind an order of the Commissioner has been in existence in more or less its present form since 1911,[2] apparently

---

[2] Oregon Laws 1911, ch 279, p 483.

no challenge to the authority of the circuit court to modify a penalty imposed by the Commissioner has ever reached our Supreme Court.

Unlike the limited powers granted to this court under the APA[3] to review orders of administrative agencies, the public utility statute, ORS 756.598, expressly gives the reviewing court authority to "modify" the orders of the Commissioner.

The word "modify" has been defined by our Supreme Court as follows:

"* * * In a general sense, to modify means to change or vary, to qualify or reduce * * *." *State v. Lawrence,* 12 Or 297, 7 P 116 (1885).

*See also,* 27 Words and Phrases 662 et seq (1961).

This case presents a different situation than that presented in *Pacific N.W. Bell v. Sabin, supra,* since here the action of the circuit court did not constitute modification of the Commissioner's order in an area of his technical expertise, rate-making. Rather, the cir-

---

[3] ORS 183.482(8) provides:

"The court may affirm, reverse or remand the order. The court shall reverse or remand the order only if it finds:

"(a) The order to be unlawful in substance or procedure, but error in procedure shall not be cause for reversal or remand unless the court shall find that substantial rights of the petitioner were prejudiced thereby; or

"(b) The statute, rule or order to be unconstitutional; or

"(c) The rule which the order enforces or upon which the order is based or dependent, is invalid under the provisions of subsection (3) of ORS 183.400; or

"(d) The order is not supported by substantial evidence in the whole record."

In *Remodeling Consult. v. Builders Bd.,* 19 Or App 794, 801, 528 P2d 1373 (1974), Sup Ct *review denied* (1975), petitioner Remodeling Consultants requested this court to modify a $1,000 penalty imposed on petitioner for failure to comply with the home builders licensing law. In denying petitioner's request we said:

"* * * Where as here the penalty is within the limits authorized by the builders licensing law (ORS 701.992), it is beyond the authority of this court under the power of review granted us by the legislature to modify the penalty. * * *"

Accord: *Thoren v. Builders Board,* 21 Or App 148, 533 P2d 1388 (1975).

cuit court here modified only the civil penalty imposed by the Commissioner for violation of the utility statutes, an area which, unlike rate-making, involves no special expertise.

■ We conclude that the legislature, by specifically giving the circuit court the power to modify orders of the Commissioner intended that orders of the Commissioner be subject to a meaningful review. Here, the circuit court reviewed the penalty imposed by the Commissioner and determined it to be unreasonable under the circumstances.

■ We agree with the action of the circuit court in reducing the instant penalty. *See, So. Ill. Asphalt Co. v. Pollution Control Bd.,* 60 Ill2d 204, 326 NE2d 406 (1975), where the Illinois Supreme Court upheld the action of the trial court in reducing the monetary penalties imposed by the Pollution Control Board.

Plaintiffs' request by cross-appeal for a further reduction in the monetary penalty is denied.

Affirmed.

**FORT, J.,** dissenting.

The majority concludes that under ORS 756.598 the trial court had the power to modify the sanction imposed by the Commissioner for the violations found by him to have been committed by respondents. The commission of the violations is admitted.

ORS 767.470(1, 2, 4) provides:

"(1) In addition to all other penalties provided by law, every person who violates or who procures, aids or abets in the violation of ORS 767.005 to 767.315, 767.405 to 767.495 or 767.605 to 767.640 or any order, rule, regulation or decision of the commissioner shall incur a penalty of $100 for every such violation.

"(2) Each such violation shall be a separate offense and in case of a continuation violation every day's continuance is a separate violation. Every act of commission or omission which procures, aids or abets in the violation

is a violation under this section and subject to the penalty provided in this section.

"* * * * *

"(4) The commissioner may mitigate any penalty provided for in this section on such terms as he considers proper if:

"(a) The defendant admits the violations alleged in the complaint and makes timely request for mitigation of the penalty; or

"(b) The defendant submits to the commissioner a written request for mitigation of the penalty within 15 days from the date the penalty order is served."

Two questions are presented. First, does ORS 756.580(1) authorize the circuit court or this court to set aside a sanction imposed under ORS 767.470? Second, assuming that it does have the power to modify such a sanction, what, if any, limits are imposed upon it in the exercise of that power?

The court distinguishes *Pacific N. W. Bell v. Sabin,* 21 Or App 200, 534 P2d 984, Sup Ct *review denied* (1975), on the ground that the imposition of sanctions upon a carrier found to have violated the Motor Carrier Act does not primarily involve the exercise of technical expertise by the Commissioner. I am unable to agree with that conclusion. The determination of an appropriate sanction under ORS 767.470, it seems to me, must rest in a major degree upon technical expertise and knowledge of the methods, practices and problems common to the motor carrier industry.

In addition the legislative scheme of ORS 767.470 seems to me to support the view that the legislature intended to vest this authority in the Commissioner, since ORS 767.470(4) specifically authorizes the Commissioner to "mitigate any penalty provided for in this section" upon compliance with paragraphs (a) or (b) thereof. Otherwise the statute in subsections (1) and (2) thereof itself imposes the required sanction.

I would construe those subsections as vesting the

power of mitigation in the Commissioner and would limit the power to modify the sanction, if it exists at all, to cases where the trial court finds by clear and convincing evidence that the Commissioner either in denying to mitigate or in the amount of diminution allowed has abused the discretion given him by the statute. Even assuming the court has power to modify a sanction, in areas where exercise of discretion by an administrative agency is involved it is presumed under ORS 41.360(15) that official duty has been regularly performed. *Ring v. Patterson,* 137 Or 234, 240, 1 P2d 1105 (1931); *Acc. Prev. Div. v. Sunrise Seed,* 26 Or App 361, 552 P2d 558 (1976). The burden of proof is upon the appellants under ORS 756.594 to establish "that the order is unreasonable or unlawful." *See also:* ORS 41.120; *Acc. Prev. Div. v. Sunrise Seed, supra.*

As appears from the statement of facts the violations were deliberate and committed daily over a long period of time solely for the benefit of plaintiffs, both of whom were widely experienced in the motor carrier business.

ORS 756.598 requires "the court shall not substitute its judgement [sic] for that of the commissioner as to any finding of fact supported by substantial evidence. * * *" In my view the record shows there was substantial evidence as shown in the court's statement of facts to support the sanction here imposed. The fact that the trial court or this court might disagree with the sanction imposed therefor affords no reason to reverse the Commissioner's order where, as here, there is substantial evidence to support it, even though it may appear harsh. The appellate courts of this state have from the beginning refused, for example, in countless criminal cases, to set aside or modify the sanction imposed by the trial court upon a defendant, however harsh it may appear, so long as it was within the statutory and constitutional authority for the offense charged absent fraud or gross abuse of discretion. Not only can I not find anything in the statutory

scheme here involved to indicate a contrary legislative intent, but rather I find within it a clear requirement that modification of sanctions by the court is subject to the substantial evidence rule. ORS 756.598. Accordingly, I would reverse the trial court and affirm the order of the Public Utility Commissioner, and thus respectfully dissent.