Argued January 5, reversed and remanded March 24, 1977

## DICKINSON et al, *Respondents,*
### *v.*
## DAVIS, *Petitioner.*
### (CA 5402, SC 24722)
561 P2d 1019

Bruce DeBolt, Assistant Attorney General, Salem, argued the cause for petitioner. With him on the briefs

[ 665 ]

were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General.

John R. Urquhart, Portland, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, and Holman, Tongue, Howell, Bryson, Lent, and Linde, Justices.

LINDE, J.

## LINDE, J.

Woolwine Trucking Company and Dickinson, respondents in this case, collaborated in an arrangement by which Dickinson would operate an automobile parts delivery service in Portland under an existing Public Utility Commissioner's permit held by Woolwine until Dickinson could determine whether the business would be profitable. When Dickinson applied for a PUC permit in his own name some seven months later, the commissioner learned of this arrangement and initiated proceedings under ORS 767.470, to impose civil penalties of $100 a day for 229 days of unlawful operation, or $22,900 against each respondent. Eventually both respondents exercised their statutory option to admit the violation and petition for mitigation of the penalty, ORS 767.470(4)(a), and the commissioner mitigated the penalties to $75 a day, or $17,175 against each.

Upon respondents' suit for judicial review under ORS 756.580, the circuit court found the order of mitigation to be unreasonable and reduced the penalties to 25 per cent, or $5,725. Both sides appealed, and the Court of Appeals affirmed. 26 Or App 285, 552 P2d 1333 (1976). We granted review on the commissioner's petition to resolve issues concerning the nature of the commissioner's discretion over civil penalties and the scope of judicial review. Respondents did not pursue their cross-appeal in this court.

The two issues of the commissioner's statutory discretion and the reviewing court's scope of review are necessarily interrelated. Since the court in this case replaced the commissioner's decision with one of its own, we begin with the issue of the reviewing court's assignment under the PUC statutes. That assignment is not easy to ascertain.

Jurisdiction and venue for suits challenging PUC

orders is placed in the circuit court in any one of three possible counties. The governing section provides:

ORS 756.580(1):

"A party to any proceeding before the commissioner, when aggrieved by any findings of fact, conclusions of law or order, including the dismissal of any complaint or application by the commissioner, may prosecute a suit against the commissioner to modify, vacate or set aside such findings of fact, conclusions of law or order."

Subsequent sections deal with procedure in the circuit court. The following two sections speak directly to the scope of review:

ORS 756.594:

"In any suit referred to in ORS 756.580, the burden of proof is upon the party seeking to modify, vacate or set aside findings of fact, conclusions of law or the order to show by clear and satisfactory evidence that the order is unreasonable or unlawful."

ORS 756.598(1):

"Court review of any findings of fact, conclusions of law or order referred to in ORS 756.580, shall be conducted by the court without a jury as a suit in equity but the court shall not substitute its judgement for that of the commissioner as to any findings of fact supported by substantial evidence. The review shall be confined to the record and no additional evidence shall be received except as provided in ORS 756.600 or except to show alleged irregularities in procedure before the commissioner not shown in the record. The court may affirm, modify, reverse or remand the order."[1]

In these two sections the legislature has presented the court with contradictory directives. They result from superimposing on a provision for *de novo* review that dates back to the original Railroad Code, Oregon Laws 1907, ch 53, § 32, a modern addition that gives finality to agency findings of fact when supported by

---

[1] ORS 756.600, referred to in the quoted section, allows the court to order the commissioner to take additional evidence if it is shown "that the additional evidence is material and that there were good and substantial reasons for failure to present it in the proceeding before the commissioner".

substantial evidence in an adjudicatory agency record. Oregon Laws 1971, ch 655, § 60. Under the resulting statute, a party challenging the agency order is to carry *in court* the "burden of proof . . . to show by clear and satisfactory evidence that the order is unreasonable or unlawful." Yet judicial review is to be confined to the record made before the agency. Thus a plaintiff must carry his assigned burden of proof on the basis of "clear and satisfactory evidence" in the administrative record. Moreover, the court is not to exercise independent judgment on the facts if the agency's findings are supported by substantial evidence. Thus a plaintiff cannot prevail even on evidence that the reviewing court considers clear and satisfactory as long as there is a contrary finding supported by substantial evidence. On the other hand, even if a finding lacks support in substantial evidence (which is ordinarily sufficient to invalidate an order on conventional judicial review) the literal consequence of the 1971 decision to retain ORS 756.594 is that the plaintiff still has an independent burden to "prove" invalidity by evidence in the agency record, insofar as that conclusion depends on facts.[2] The two sections seem to leave

---

[2]The original burden of proof, which can be traced to Wisconsin's earliest state railroad commission law, can be explained as relating to judicial review of rates, a form of delegated rulemaking. See Minneapolis, St. P. & S. Ste. M. Ry. Co. v. Railroad Comm. of Wisconsin, 136 Wis 146, 116 NW 905 (1908). Although burden of "proof" properly relates to facts, not to a legal conclusion, the notion of proving a rate unlawful made sense when courts felt obliged to exercise independent review of the utility's rate base and probable rate of return to avoid unconstitutional "confiscation". *See Pacific Tel. & Tel. Co. v. Wallace,* 158 Or 210, 75 P2d 942 (1938). This court attempted to combine the statutory burden of proof with a presumptive validity of agency findings in *Warren v. Bean,* 167 Or 116, 115 P2d 167 (1941), quoted also in *Butcher v. Flagg,* 185 Or 471, 477, 203 P2d 651 (1949).

Though it might be tempting to think that the 1971 enactment of ORS 756.598 meant to replace ORS 756.594 with respect to review of on-the-record orders, the legislature re-enacted that section in its overall revision of the PUC statutes. Oregon Laws 1971, ch 655, §§ 59, 60. The comments of the preparatory committee state that § 60, the new ORS 756.598, was designed to adopt the rule of ORS 183.480 of the then Administrative Procedure Act (now ORS 183.482(7) and (8)(d)), but they offer no explanation for the retention of ORS 756.594. Advisory Committee on Public Utility and Carrier Law Revision, Preliminary Draft 58-59 (1970).

only one other situation in which the evidentiary standard of ORS 756.594 applies alone, without a prior search for "substantial evidence" supporting the commissioner. That is in a challenge to an agency order which is predicated on facts, but facts about which agency findings have been neither made nor required.

We turn to an examination of the commissioner's mitigation order to determine what type of agency action it presented to the circuit court.

■ It is agreed that ORS 767.470, under which the present order was made, delegates some discretion to the commissioner in imposing a penalty for violations of the Motor Carrier act. The imposition of penalties for statutory violations and the authorization of executive officers or agencies to determine such violations and penalties pose old constitutional issues that are currently enjoying a flourishing revival. A recent study concludes that "chaos abounds in the area of administrative crimes."[3] For that reason we take care

---

[3] Abrahams and Snowden, *Separation of Powers and Administrative Crimes: A Study of Irreconcilables,* 1976 So Ill U L J 1, 148. The article cites and discusses these recent discussions of the issues: Charney, *The Need for Constitutional Protections for Defendants in Civil Penalty Cases,* 59 Cornell L Rev 478 (1974); Force, *Administrative Adjudication of Traffic Violations Confronts the Doctrine of Separation of Powers,* 49 Tul L Rev 84 (1974); Gellhorn, *Administrative Prescription and Imposition of Penalties,* 1970 Wash U L Q 265; Marshall, *Environmental Protection and the Role of the Civil Money Penalty: Some Practical and Legal Considerations,* 4 Environmental Affairs 323 (1975); Schwenk, *The Administrative Crime, its Creation and Punishment by Administrative Agencies,* 42 Mich L Rev 51 (1943); Comments: *Administrative Penalty Regulations,* 43 Colum L Rev 213 (1943); *Commingled Civil and Criminal Proceedings: A Peek at Constitutional Limitations and a Poke at the SEC,* 34 Geo Wash L Rev 527 (1966); *The Illinois Environmental Protection Act and the Power of an Administrative Agency to Impose a Fine,* 50 Chi.-Kent L Rev 466 (1973); *The Imposition of Administrative Penalties and the Right to Trial by Jury—An Unheralded Expansion of Criminal Law?,* 65 J Crim L & C 345 (1974); *OSHA Penalties: Some Constitutional Considerations,* 10 Idaho L Rev 223 (1974).

Additional sources are: Frankel, *Lawlessness in Sentencing,* 41 U Cin L Rev 1 (1972); McKay, *Sanctions in Motion: The Administrative Process,* 49 Iowa L Rev 441 (1964); Sofaer, *Judicial Control of Informal Discretionary Adjudication and Enforcement,* 72 Colum L Rev 1293 (1972); Thomforde, *Controlling Administrative Sanctions,* 74 Mich L Rev 709 (1976); Wright,

to state what is not involved in the present case. No claim is before us that the statute violates the separation of powers, or is an unlawful delegation, or denies alleged violators the safeguards of criminal procedure or a civil jury.[4] The legislature itself has mandated a penalty of $100 a day for every violation in addition to all other applicable penalties.[5] The commissioner determines the violation in an adjudicatory proceeding, but collection is by a separate suit by the attorney general after prior opportunity for judicial review of the commissioner's order. ORS 767.470(3), (5). However, subsection (4) provides that the commissioner "may mitigate any penalty provided for in this section on such terms as he considers proper". It is only the proper exercise of this discretionary authority, and more specifically the scope of the circuit court's review of that discretion if properly exercised, that we are called upon to decide.

The commissioner argues that his decision on mitigation of the statutory penalty is constrained only by

*Beyond Discretionary Justice,* 81 Yale L J 575 (1972); Note, 1975 Brigham Young U L Rev 543; Goldschmid, *An Evaluation of the Present and Potential Use of Civil Money Penalties as a Sanction by Federal Administrative Agencies,* in 2 Administrative Conference of the United States, Recommendations and Reports 896.

[4] Some of these problems have recently received thoughtful analysis by the U.S. Court of Appeals in a six-to-four decision *en banc* in *Frank Irey, Jr., Inc., v. Occupational Safety & Health Review Comm'n,* 519 F2d 1200 (3d Cir 1975) and in *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n,* 518 F2d 990 (5th Cir 1975). The Supreme Court decided that the federal seventh amendment was not applicable in *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n,* —— US——, 97 S Ct 1261, 51 LEd2 464 (1977).

[5] ORS 767.470(1) and (2):

"(1) In addition to all other penalties provided by law, every person who violates or who procures, aids or abets in the violation of ORS 767.005 to 767.315, 767.405 to 767.495 or 767.605 to 767.640 or any order, rule, regulation or decision of the commissioner shall incur a penalty of $100 for every such violation.

"(2) Each such violation shall be a separate offense and in case of a continuing violation every day's continuance is a separate violation. Every act of commission or omission which procures, aids or abets in the violation is a violation under this section and subject to the penalty provided in this section."

the test of "manifest abuse of discretion," which he equates with "arbitrary and capricious action." Respondents, on the other hand, contend that the commissioner is obliged to exercise his discretion according to standards which should be established by prior rulemaking, that in the absence of such standards his orders are *per se* "unreasonable or unlawful" within the meaning of ORS 756.580, and that in any event the circuit court was right to find the magnitude of the penalties after mitigation "unreasonable" on the facts of this case and to mitigate them further. We hold that the commissioner's discretion is not as unconstrained as he claims, nor does it require the prior promulgation of standards that respondents demand.

When the legislature in 1951 created a civil penalty subject to mitigation rather than one set by the commissioner in the first instance, its choice may have been influenced by constitutional doubts about administrative penalties. *See* K. C. Davis, Administrative Law 69 (1951) citing *Tite v. State Tax Comm'n,* 89 Utah 404, 57 P2d 734 (1936) and similar cases. Whether or not that is so, we do not believe mitigation was meant to be simply an act of executive clemency any more than agency discretion to set the penalty would have meant to authorize aimless or unconsidered action. Indeed, it can be contended that precisely because an agency may see mitigation or remission as acts of grace, and by its mere inaction may impose the maximum penalty, these decisions represent greater threats of irrationality, inequality, and misuse. *See* W. Gellhorn, *Administrative Prescription and Imposition of Penalties,* 1970 Wash U L Q 265, 279-283; Nelson, *Administrative Blackmail: The Remission of Penalties,* 4 West Pol Q 610 (1950). In any event, what the legislature has authorized the commissioner to do is not to grant such mitigation as he thinks proper, but to mitigate "on such terms" as he considers proper. Without making too much of the words, they certainly

suggest that the commissioner be prepared to articulate the terms of his consideration.

The terms for mitigation need not be stated in advance as rules, though of course they may be. Their importance is not to give notice to potential violators. It is to identify the factors to which the commissioner, in his view of the statutory policies, attaches relatively more or less importance in exercising his discretion, so as to lead to a rational evaluation of the facts in the specific case. Moreover, articulation of the commissioner's reasons and their application to the case facilitates development of consistent agency policies as the legislature presumably intended, as well as equality of treatment, at least until the commissioner adopts a reasoned change of policy. *See* K. C. Davis, Administrative Law of the Seventies, 377-382 (1976); Thomforde, *Controlling Administrative Sanctions,* 74 Mich L Rev 709, 739 et seq (1976). The statement of the governing considerations need not be formal or technical; substantial compliance is sufficient under ORS 756.062.

Administrative discretion is not a magic word. It is only a range of responsible choice in pursuing one or several objectives more or less broadly indicated by the legislature (or, in Oregon, sometimes by the people themselves) under various circumstances pertinent to those objectives. This applies to a discretionary choice of sanctions just as to other delegated authority. If administrative penalties are to be distinguished from criminal punishment, one reason at least is that they are enacted as means toward some purposive policy. Agency discretion in mitigation orders, as in many others, thus comprises two judgments. One is the agency's assessment and ranking of the policy objectives explicit or implicit in the statute. The other is the judgment that one or more of these objectives will in fact be served by a given level of financial penalties.

This recognition also elucidates the aggrieved party's task to convince the reviewing court that the

order is "unreasonable or unlawful," ORS 756.594. Judicial review of agency discretion is not a contest of adjectives. The commissioner's order will be *unlawful* (apart from procedural shortcomings) if his policy reasons are inconsistent with or outside the range of those explicit or implicit in the statute. Within that range, what he exercises is not so much expertise as delegated responsibility for the statutory policies. *Reasonableness,* on the other hand, is a measure of the commissioner's estimate of what penalties, when balanced against mitigating factors, will serve the policies he has identified. Depending on those policies, his reasons may or may not depend on facts that a party will want an opportunity to disprove; and of course only facts, past, present, or projected, can be the subject of a "burden of proof . . . by clear and satisfactory evidence."[6] But the commissioner's reasons, when properly articulated, are entitled to the deference commonly accorded agency "expertise" insofar as they reflect the commissioner's view of facts concerning the regulated industry, the causes and consequences of statutory violations, problems of enforcement, and the relative efficacy of penalties under various conditions of the violator's intentions or financial capacity, or whatever factors the commissioner considers pertinent.

---

[6] *Casciato v. OLCC,* 181 Or 707, 185 P2d 246 (1947), cited by respondents, speaks of "abuse of discretion," but that was the standard of review prescribed in the particular statute. The court's reading of this standard to require either an unauthorized agency purpose or a factually baseless action toward the purpose is consistent with the present analysis.

Solely as an illustration and not as a suggestion on our part, perhaps the commissioner might decide that proper terms of mitigation should take into account the financial impact of a penalty on enterprises of different sizes, or a difference between intentional and unintentional violators, or between first and repeated violations, simply from considerations of fairness or equity that are not susceptible of proof or disproof. On the other hand, if he bases mitigation on assertions about the apparent frequency of a type of violation or about the kind or magnitude of harm it causes, these assertions may be subject to factual challenges. Since a plaintiff's evidence for such a challenge must be in the agency record, this may require reopening that record after the commissioner has given his reasons for the mitigation order. ORS 756.598 and 756.600.

When the commissioner properly states the factual predicates for "the terms he considers proper" in mitigating penalties, ORS 756.594 places on plaintiffs the burden to disprove them by "clear and satisfactory evidence," submitted in the agency record under ORS 756.598 or ORS 756.600. The statute does not direct the reviewing court to substitute its judgment on the reasonableness of the commissioner's order in the sense of moderation or appropriateness. Nor is respondents' argument in this respect helped by the reviewing court's power under ORS 756.598 to "modify" the order, as the Court of Appeals thought. Authority to modify an agency order on judicial review is a very useful alternative to complete affirmance or reversal of the order or remand to the agency, but it is proper only when the court can find that the law mandates one single correct result. This is not the case here.

The commissioner's initial Order # 74-767, his Orders # 75-140 on Dickinson's and 75-141 on Woolwine's petition for reconsideration, and an accompanying opinion recited certain findings said to justify a 25 per cent mitigation of the statutory penalty. Those presently pertinent include the following: Respondents stipulated that they violated ORS 767.105(1) by operating without PUC authority. Both knew that Dickinson needed operating authority from the Oregon PUC, but Dickinson wished to determine first whether the proposed operation would be profitable before seeking such authority. By virtue of their experience in trucking they were not entitled to rely on legal advice that their plan of operation was legal. Dickinson's later application for authority to operate his proposed automobile parts delivery service was supported by 21 shippers. There were other ways to meet the need for that service. Neither respondent had a record of prior violations. Their profits from the unauthorized operation were slight. Their modest financial condition was taken into consideration.

■ The circuit court did not examine the commission-

er's findings and opinion to determine whether they adequately showed the premises of policy and of factual efficacy upon which the commissioner based his exercise of discretion in these mitigation orders, because the court proceeded under a different view of its scope of review. Thus it did not ask whether the commissioner's premises were beyond the range of the statute or were contradicted by clear and satisfactory evidence. Whether the commissioner's policies on mitigation of penalties are indeed contingent on facts, beyond those concerning the particular violations, can be determined only after his reasons are known. See note 6. Perhaps, after hearing argument, the circuit court may find it possible to answer these questions on the present record, or it may find it necessary to obtain further clarification of the commissioner's reasons or even pertinent facts under ORS 756.600. That must be the court's decision in the first instance. However, since the court assumed a different view of its role under ORS 756.594 and ORS 756.598, it made its own findings and concluded that the proper mitigation should be to 25 per cent of the statutory penalty. This was error.

Accordingly, we reverse the judgment of the Court of Appeals and remand with directions to remand to the circuit court for proceedings in accordance with this opinion.

Reversed and remanded.