Argued and submitted June 17, reversed and remanded September 9, 2021

In the Matter of the Dismantler of
NW METALS, INC.,
*Petitioner,*

*v.*

DRIVER AND MOTOR VEHICLE
SERVICES DIVISION (DMV),
a Division of the Department of Transportation,
*Respondent.*

Driver and Motor Vehicle Services Division,
2020DMV15384; A174247

498 P3d 869

Petitioner seeks judicial review of a final order of the Driver and Motor Vehicle Services Division (DMV), upholding a 36-month suspension of petitioner's dismantler certificate and the imposition of $5,000 in civil penalties for violations of ORS 822.137(2)(a) and ORS 822.133(2)(b). Petitioner contends that DMV misconstrued ORS 822.137(2)(a)—which applies when a dismantler "acquires" a motor vehicle "without obtaining a certificate of sale"—and that petitioner did not actually violate that statute. Petitioner also contends that DMV erred in suspending its dismantler certificate for 36 months, the maximum duration allowed under OAR 735-152-0050(4)(c). *Held*: DMV misconstrued ORS 822.137(2)(a) and, consequently, erroneously concluded that petitioner violated that statute. As a single legal entity that engages in both vehicle sales and vehicle dismantling, petitioner did not "acquire" a vehicle when it transferred a vehicle from its distributor inventory to its dismantler inventory. Because the ALJ relied on the totality of violations in imposing a 36-month certificate suspension, the appropriate sanction for the remaining violations must be reconsidered on remand.

Reversed and remanded.

Adam Kimmell argued the cause and filed the briefs for petitioner.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Hadlock, Judge pro tempore.

AOYAGI, J.

Reversed and remanded.

**AOYAGI, J.**

Petitioner seeks judicial review of a final order of the Driver and Motor Vehicle Services Division (DMV), upholding a 36-month suspension of petitioner's dismantler certificate and the imposition of $5,000 in civil penalties, based on 10 violations of ORS 822.137(2)(a) and five violations of ORS 822.133(2)(b). As to the 10 violations of ORS 822.137(2)(a), petitioner contends that DMV misconstrued the statute—which applies when a dismantler "acquires" a motor vehicle "without obtaining a certificate of sale"—and that petitioner did not actually violate the statute. Separately, as to the entire order, petitioner argues that DMV did not comply with OAR 735-150-0005(7)(d), which requires DMV to consult with the Oregon Dealer Advisory Committee (ODAC) before taking disciplinary action against a dismantler to revoke, suspend, or place the dismantler on probation.

For the reasons that follow, we agree with petitioner that DMV misconstrued ORS 822.137(2)(a) and, accordingly, reverse and remand. However, we reject petitioner's request to set aside the entire order based on DMV's alleged noncompliance with OAR 735-150-0005(7)(d).

## I.   FACTS

We take the facts from the unchallenged factual findings of the administrative law judge (ALJ). *See Meltebeke v. Bureau of Labor and Industries*, 322 Or 132, 134, 903 P2d 351 (1995).

In 2014, DMV issued a certificate to petitioner to operate a motor vehicle dismantler business. The certificate was issued in petitioner's legal name of "NW Metals Inc." Petitioner also holds a DMV-issued certificate to operate a vehicle dealership business. Petitioner operates the dealership business under the name "NW Metals Inc. DBA Northwest Motors." Both businesses operate from the same street address.

In October 2017, petitioner, acting through its dealership business,[1] purchased a 2006 BMW from a towing

---

[1] In stating the facts, we use the ALJ's terminology, which sometimes refers to petitioner's "dealership business" and "dismantler business" and other times refers to the two "sides" of petitioner's business. In this context, as discussed more later, there is no meaningful distinction between those characterizations.

company. Seven weeks later, petitioner transferred the 2006 BMW into its dismantler vehicle inventory. Petitioner did not prepare or maintain a certificate of sale documenting that its dismantler business had acquired the 2006 BMW from its dealership business. Petitioner acted in the same manner with respect to a 2001 BMW purchased in November 2018, a 2003 BMW purchased in January 2019, a 2008 Audi purchased in January 2019, and a 2008 Honda purchased in April 2019. In each case, the bill of sale from the towing company explicitly transferred ownership of the vehicle to "NW Metals Inc. DBA Northwest Motors." In each case, petitioner did not prepare or maintain a certificate of sale documenting that its dismantler business had acquired the vehicle from its dealership business. We refer to these five vehicles collectively as the "Towed Vehicles."

From September 24, 2018 through September 24, 2019—a period during which petitioner purchased four of the five Towed Vehicles—petitioner was on probation with DMV for violating ORS 822.137(2)(c) (failure to remove and destroy registration plates from dismantled vehicles) and ORS 822.133(2)(e) (failure to timely submit dismantler notice). DMV had brought a disciplinary action for those violations in 2018, which DMV and petitioner resolved by settlement, with petitioner acknowledging the violations, paying a civil penalty, and accepting a one-year probation period.

In September 2019, petitioner, acting through its dismantler business, purchased five vehicles from a Copart auction, which we refer to collectively as the "Copart Vehicles." Copart is a nationwide motor vehicle auctioneer. Petitioner purchases vehicles from Copart and then either sells them through its dealership or transfers them to the dismantler side of its business for disposal. Petitioner has a single account with Copart under the business name "NW Metals Inc., dba - Northwest Motors" and petitioner's dealership certificate number. When Copart sells a vehicle to petitioner, it uses a stamp with that business name that it prepared for petitioner's account, such that the title transfer documents indicate that the vehicles were sold to that business. With respect to the five vehicles that petitioner purchased in September 2019, petitioner took immediate possession of the vehicles, but the title transfer documents were

not yet available. Believing that Copart had the titles and that formal title transfer would be accomplished eventually, petitioner dismantled the five Copart Vehicles in September. Petitioner obtained the vehicles' title transfer documents in October.

In November 2019, DMV inspected petitioner's dismantler business and, in the process, learned about petitioner dismantling the five Copart Vehicles before title was transferred. DMV decided to take disciplinary action. In December 2019, DMV sent its investigator's report, detailing the alleged violations, to ODAC with a request for "comments or suggested revisions." ODAC did not respond. DMV then notified petitioner of its intent to impose civil penalties and to suspend petitioner's dismantler certificate for 36 months, based on petitioner dismantling five vehicles (the Copart Vehicles) prior to obtaining ownership documents in violation of ORS 822.133(2)(b).[2]

Thereafter, DMV's investigator prepared a supplemental report, and DMV decided to expand its disciplinary action. Without contacting ODAC again, DMV issued amended notices to petitioner in February 2020. In addition to the five violations of ORS 822.133(2)(b), the amended notices asserted that petitioner had committed 10 violations of ORS 822.137(2)(a) and OAR 735-152-0031(1)(a)(F) and (H), by acquiring 10 vehicles—that is, the five Towed Vehicles and the five Copart Vehicles—without obtaining certificates of sale. DMV proposed to impose civil penalties in a greater amount than previously noticed and to suspend petitioner's dismantler certificate for 36 months. Petitioner timely requested a hearing.

A hearing was held before an ALJ. Based on the facts as described above, the ALJ concluded that petitioner had dismantled five vehicles prior to obtaining ownership documents, in violation of ORS 822.133(2)(b). The ALJ further concluded that petitioner had acquired 10 vehicles without obtaining certificates of sale, in violation

---

[2] *See* ORS 822.133(2)(b) ("In the operation of a motor vehicle dismantling business, a dismantler: *** [m]ay not remove parts from or destroy a motor vehicle prior to obtaining an ownership record or salvage title certificate for the vehicle.").

of ORS 822.137(2)(a) and OAR 735-152-0031(l)(a)(F) and (H). As a sanction for those violations, the ALJ imposed civil penalties totaling $5,000, which consisted of a $500 penalty for each of the five violations of ORS 822.133 (2)(6) and a $250 penalty for each of the 10 violations of ORS 822.137(2)(a) and OAR 735-152-0031(1)(a)(F) and (H). Petitioner's dismantler certificate was suspended for 36 months, which was the maximum duration allowed under OAR 735-152-0050(4)(c).

## II.   CONSTRUCTION OF ORS 822.137(2)(A)

In its first assignment of error, petitioner contends that DMV misconstrued ORS 822.137(2)(a) and that, properly construed, petitioner did not violate ORS 822.137(2)(a), which provides:

"In addition to any other penalty provided by law, the department may impose on a dismantler, in the manner provided by ORS 183.745, a civil penalty not to exceed $1,000 per violation if the dismantler:

"(a)   *Acquires a motor vehicle* or major component part[3] *without obtaining a certificate of sale* and, if applicable, a certificate of title."

(Emphases added.)

The parties' disagreement centers on the word "acquires." Specifically, within the meaning of ORS 822.137 (2)(a), did petitioner "acquire" a motor vehicle without obtaining a certificate of sale? For purposes of the motor vehicle code, a "certificate of sale" is "a document that contains the name and address of the purchaser and seller of a motor vehicle or component part, the date of sale, the consideration paid and a description of the vehicle or part and other essential elements of a sale of a motor vehicle or major component part." ORS 801.183.

To be clear, for present purposes, it is undisputed that, when petitioner purchased each of the 10 vehicles from the towing company or Copart—that is, the five Towed

---

[3] A "major component part" is defined in ORS 822.137(1), with examples, but is not relevant here.

Vehicles and the five Copart Vehicles—petitioner obtained a certificate of sale *from the towing company or Copart*. The issue is whether petitioner needed to obtain *another* certificate of sale *from itself* when it decided to dismantle a vehicle rather than sell it and therefore transferred it from its dealer inventory to its dismantler inventory.

"To discern the meaning of the statute most likely intended by the legislature that enacted it, we examine the text and context of the statute and, where appropriate, legislative history and pertinent canons of construction." *Dowell v. Oregon Mutual Ins. Co.*, 361 Or 62, 67, 388 P3d 1050 (2017). We begin with the text, which is "the starting point for interpretation" and "the best evidence of the legislature's intent." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). In this case, our task is made much easier by the fact that DMV has adopted an implementing regulation that defines "acquires" for purposes of ORS 822.100 to 822.150, and no one challenges that definition.

OAR 735-152-0000(1) defines "acquires" as meaning "to take physical possession of a motor vehicle together with possession of the vehicle's ownership record." We note that that definition of "acquires" is adapted to the specific context but is consistent with the common definition. *See Webster's Third New Int'l Dictionary* 18 (unabridged ed 2002) (defining "acquire," as relevant here, to mean "to come into possession, control, or power of disposal of").

With the OAR definition in mind, we have considered the parties' competing statutory construction arguments, and we agree with petitioner that petitioner did not "acquire" a vehicle for purposes of ORS 822.137(2)(a) when it internally transferred a vehicle from its dealer inventory to its dismantler inventory.

Petitioner is an Oregon corporation. It both sells and dismantles motor vehicles, and it is licensed to do both. However, petitioner is a single legal entity: NW Metals Inc. Describing petitioner as having two "businesses" does not change that fact. Petitioner's use of an assumed business name for some purposes does not change that fact. *See Halone's Auto Repair v. B & R Auto Wrecking*, 251 Or App

818, 824, 285 P3d 739 (2012) ("[A]n assumed business name is not a separate legal entity, distinct from the individual or entity that does business using that name."). As a single legal entity, petitioner cannot take physical possession of a vehicle *from itself*, nor can it take possession of a vehicle's ownership record *from itself. See* OAR 735-152-0000(1) ("acquires" means "to take physical possession of a motor vehicle together with possession of the vehicle's ownership record").

Although not central to our analysis, we also note that it would stretch the meaning of "obtaining" to say that a person "obtains" a certificate of sale when the person creates his own document that lists himself as both the seller and the purchaser and states that he gave himself no consideration. *See* ORS 822.137(2)(a) (allowing imposition of a civil penalty if a dismantler acquires a motor vehicle "without obtaining a certificate of sale and, if applicable, a certificate of title"); *Webster's* at 1559 (unabridged ed 2002) (defining "obtain," as relevant here, to mean "to gain or attain possession or disposal of").

DMV has not identified anything in the text, context, or legislative history that meaningfully supports its construction of ORS 822.137(2)(a). Rather, DMV's arguments are directed mostly to the policy benefits of requiring companies that both sell and dismantle motor vehicles to use certificates of sale to document internal transfers. DMV may have valid reasons for wanting motor vehicle dealers and dismantlers to maintain good records, but that does not allow DMV to impose specific additional recordkeeping requirements under the guise of ORS 822.137(2)(a). Here, it appears to be undisputed that petitioner maintains records of its transfers of vehicles between dealer inventory and dismantler inventory—it just does not prepare *certificates of sale* from itself to itself. *See* OAR 735-152-0031(1)(a) (requiring dismantlers to "maintain records on each motor vehicle or major component part acquired and taken into the inventory of the dismantler's business," including the date the vehicle was acquired). If DMV is concerned that existing recordkeeping requirements are inadequate, that is an issue for the legislature or, at least, a different statute or regulation.

In sum, we agree with petitioner that DMV misconstrued ORS 822.137(2)(a) in concluding that, when petitioner internally transfers a vehicle from its dealer inventory to its dismantler inventory, petitioner "acquires" a vehicle *from itself* and therefore must obtain a certificate of sale *from itself*—listing *itself* as both the seller and the purchaser.[4] That is an incorrect reading of the statute, and it follows that DMV was wrong to conclude that petitioner violated ORS 822.137(2)(a) on 10 occasions.[5]

### III.  DMV'S ALLEGED NONCOMPLIANCE WITH OAR 735-150-0005(7)(d)

Under OAR 735-150-0005(7)(d), "DMV will consult with [ODAC] before * * * [t]aking disciplinary action against an Oregon dismantler under OAR 735-152-0050 to revoke, suspend or place a dismantler on probation." In its second assignment of error, petitioner contends that DMV failed to consult with ODAC before taking disciplinary action against petitioner, in violation of OAR 735-150-0005(7)(d), and that DMV misinterpreted the administrative rule when it concluded otherwise.

The crux of petitioner's argument is that, once DMV decided to add 10 violations of ORS 822.137(2)(a) to its proposed disciplinary action, DMV was required to contact ODAC again, because DMV had previously notified ODAC only that it intended to discipline petitioner for five violations of a different statute. In petitioner's view, it is contrary

---

[4] We reiterate that petitioner is a single legal entity. At one point in its briefing, the state refers to petitioner as a "parent corporation" that holds both a dealer certificate and a dismantler certificate. A parent corporation is a corporation with a controlling interest in *another corporation*. *See Black's Law Dictionary* 431 (11th ed 2019). Petitioner is one corporation that does two things with motor vehicles. It is not a parent corporation, and no subsidiary corporations are involved.

[5] We note that petitioner was found to have violated both ORS 822.137 (2)(a) *and* OAR 735-152-0031(1)(a)(F) and (H), but the rule violations were paired with and derivative of the statutory violations, because the theory under which petitioner was found to have violated the rule depended on DMV's erroneous construction of the statute. Under OAR 735-152-0031(1)(a)(F) and (H), dismantlers must "maintain records" of motor vehicles "acquired and taken into the inventory of the dismantler's business," which, for a motor vehicle, must include "[t]he date the vehicle was acquired as defined in OAR 735-152-0000" and "[a]ny other information required by DMV." Petitioner was found to have violated OAR 735-152-0031(1)(a)(F) and (H) because its records did not include certificates of sales for the internal transfers.

to the language and purpose of OAR 735-150-0005(7)(d) to interpret the rule as allowing a single contact with ODAC after which additional allegations may be added without additional notice. In response, DMV contends that the ALJ properly deferred to DMV's plausible interpretation of its own rule and that, under that interpretation, DMV was not required to contact ODAC a second time.

We need not reach the merits of the second assignment of error. Given our disposition of the first assignment of error, the only violations for which petitioner may be disciplined on remand are the five violations of ORS 822.133 (2)(b). It is undisputed that DMV notified ODAC in December 2019 of its intention to discipline petitioner for those violations, including providing the proposed suspension term. In other words, DMV consulted with ODAC before taking disciplinary action against petitioner for the five violations of ORS 822.133(2)(b), *see* OAR 735-150-0005(7)(d), and it is now a moot point whether DMV adequately consulted with ODAC before taking disciplinary action against petitioner for the 10 alleged violations of ORS 822.137(2)(a).

Under the circumstances, there is no basis to set aside the portion of the final order that concludes that petitioner committed five violations of ORS 822.133(2)(b).

## IV.   CERTIFICATE SUSPENSION

In its third assignment of error, petitioner contends that DMV erred in suspending its dismantler certificate for 36 months, which is the maximum duration allowed under OAR 735-152-0050(4)(c). Petitioner claims that a 36-month suspension is "inconsistent with the factors limiting DMV discretion set forth in OAR 735-152-0050(3)." Under OAR 735-152-0050(3), the factors that DMV "may consider when imposing a sanction against a dismantler" include the severity of the violation or its impact on the public, the number of similar or related violations, whether a violation was willful or intentional, and any previous sanction or civil penalty or warning issued or imposed against the dismantler or the dismantler's principal.

In deciding sanctions, the ALJ first addressed civil penalties, imposing distinct penalties for the two distinct

sets of violations, and then addressed the suspension of petitioner's dismantler certificate, relying on both sets of violations. As to the certificate, the ALJ summarized petitioner's "vehement" arguments against a 36-month suspension, referenced OAR 735-152-0050(3), and then explained why he had concluded that a 36-month suspension was warranted:

> "The recordkeeping violations here may not have caused harm to the public, and [petitioner's] operation surely benefits many, but there were numerous violations and [petitioner] has a prior history of discipline. [*DMV*] *proved more than a dozen violations in this case*. [Petitioner] was previously disciplined and placed on probation for recordkeeping violations in 2018. [Petitioner] was explicitly warned that further recordkeeping violations could result in a 36-month suspension. Some of the violations proved in this case occurred while [petitioner] was still on probation. The most serious violations—the five instances of dismantling vehicles prior to obtaining ownership documents—occurred either while [petitioner] was still on probation or within a week of the probation's end. This is not a case where the proposed sanction would be an unreasonable application of the sanction rules. [DMV] considered relevant factors under OAR 735-152-0050 before deciding to impose the 36-month suspension. Under the circumstances of this case, [DMV] could reasonably conclude that [*petitioner's*] *conduct demonstrated* a *habitual and persistent disregard for dismantler regulations which justified imposition of a prolonged suspension*."

(Emphases added.)

Given the ALJ's reasoning, the ALJ must revisit the suspension sanction on remand. In imposing the maximum 36-month suspension, the ALJ expressly relied on the fact that DMV had "proved more than a dozen violations" of ORS 822.137(2)(a) and ORS 822.133(2)(b). The number of new violations also contributed to the ALJ's concluding rationale that, "under the circumstances of this case"—*i.e.*, petitioner having committed 10 violations of ORS 822.137 (2)(a), five violations of ORS 822.133(2)(b), and past violations of two other statutes—it was reasonable to view petitioner as demonstrating "a habitual and persistent disregard for dismantler regulations which justified imposition of a prolonged suspension."

On judicial review, we have effectively concluded that petitioner did not commit 10 of the violations on which the ALJ relied in setting the suspension sanction. On remand, it is for the ALJ to decide in the first instance what suspension, if any, is appropriate for the five violations of ORS 822.133(2)(b) on their own. We will not speculate as to what suspension will be imposed on remand, nor will we express prospective views on the limits of the agency's discretion. *See Dickinson v. Davis*, 277 Or 665, 673, 561 P2d 1019 (1977) (administrative sanctions are "discretionary").

Reversed and remanded.