Argued and submitted November 1, 1982, reargued and resubmitted June 8, decision of
Court of Appeals reversed, decision of circuit court affirmed July 26, 1983

## STATE OF OREGON,
*Respondent on review,*

*v.*

## JOHNNY DALE FREELAND,
*Petitioner on review.*

## (TC C81-04-32282; CA A22721; SC 28856)

667 P2d 509

Virginia L. Linder, Salem, argued and submitted brief for respondent on review. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

James S. Coon, Portland, argued and submitted brief for petitioner on review. With him on the brief was Sobel & Coon, Portland.

John L. Collins, McMinnville, filed a brief for amicus curiae Oregon District Attorneys Association.

Diane L. Alessi, Portland, filed a brief for amicus curiae Oregon Criminal Defense Lawyers Association. With her on the brief was John Henry Hingson, III, Oregon City.

LINDE, J.

## LINDE, J.

Oregon law provides that a person may be charged with a felony either by grand jury indictment or by a district attorney's information filed in circuit court after a showing of probable cause in a preliminary hearing before a magistrate, unless the accused waives either indictment or the preliminary hearing. Or Const art VII (amended), § 5(3) to (5); ORS 135.070-135.185. Administration of the system of initiating a prosecution, including this choice of procedure, ordinarily is in the hands of the district attorney, except in the rare instance when a grand jury may indict upon information presented by someone else. In *State v. Clark,* 291 Or 231, 630 P2d 810, *cert den* 454 US 1084 (1981) and *State v. Edmonson,* 291 Or 251, 630 P2d 822 (1981), we held that because a preliminary hearing is a privilege of significant importance to an accused, the prosecutor's choice whether to proceed with or without a preliminary hearing must comply with the constitutional command that no law shall grant "any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens." Or Const art I, § 20.

Clark and Edmonson had been indicted and been denied preliminary hearings, but because they did not show that this procedure was not applied "upon the same terms" that would "equally" be followed to charge others in the same position, their convictions were affirmed. In the present case, defendant made the showing of unequal procedure to the satisfaction of the circuit court, which dismissed the indictment. The Court of Appeals reversed, 58 Or App 163, 647 P2d 966 (1982), and we allowed review to address the issues of administering preliminary hearings "upon the same terms" for similarly situated defendants that could not be reached in *State v. Clark* and *State v. Edmonson.*

### I. *Principles of Clark and Edmonson.*

Before turning to the facts in this case, we summarize what was decided in *Clark* and *Edmonson.*

A claim of impermissibly unequal use of authority, like other claims of illegality, must be tested first against the legal source of the authority and second against the state constitution before reaching a claim under the United States Constitution. 291 Or at 233, n. 1; *State v. Smyth,* 286 Or 293, 297,

593 P2d 1166 (1979).[1] The test of unequal treatment under Or Const art I, § 20, is not always the same as the tests articulated from time to time under the federal equal protection clause, although the clauses are sufficiently similar that compliance with article I, section 20 usually will also satisfy the 14th amendment.[2] 291 Or at 243-44; *Hewitt v. SAIF*, 294 Or 33, 43, 653 P2d 970 (1982). *See, e.g., Jarvill v. City of Eugene*, 289 Or 157, 184, 185, 613 P2d 1, *cert den* 449 US 1013 (1980).

In particular, article I, section 20, expressly guarantees equality of privileges to each individual "citizen" as well as to any "class of citizens." A person therefore need not complain of being the victim of an invidiously discriminatory classification in order to invoke this guarantee, although such discrimination also is forbidden.

> "[T]his section is a guarantee against unjustified denial of equal privileges or immunities to individual citizens at least as much as against unjustified differentiation among classes of citizens. It also was early established that the guarantee reached forbidden inequality in the administration of laws under delegated authority as well as in legislative enactments
> . . . .
>
> "One branch of article I, section 20, and decisions under it thus call for analysis whether the government has made or applied a law so as to grant or deny privileges or immunities to an individual person without legitimate reasons related to that person's individual situation."

291 Or at 239, *citing State v. Cory*, 204 Or 235, 282 P2d 1054 (1955); *White v. Holman*, 44 Or 180, 74 P 933 (1904); *In re Oberg*, 21 Or 406, 28 P 130 (1891). District attorneys, like other officials, are "held to constitutional limits in the exercise of the discretion entrusted to them. . . . Their discretionary decisions, even if not subject to judicial 'supervision,' are not immune from judicial scrutiny." 291 Or at 245, *citing State v. Jones*, 279 Or 55, 566 P2d 867 (1977); *In re Rook*, 276 Or 695, 556 P2d 1351

---

[1] Here there is no claim that the prosecutor's choice to take a charge to a preliminary hearing is expressly or impliedly constrained by a statute or other authoritative rule short of the state and federal constitutions. *Cf. State v. Haynes*, 288 Or 59, 71 n. 4, 602 P2d 272 (1979), *cert den* 446 US 945 (1980); *State v. Spada*, 286 Or 305, 594 P2d 815 (1979).

[2] US Const amend 14:

"No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

(1976); *State v. Langley,* 214 Or 445, 323 P2d 301, *cert den* 358 US 826 (1958).

█ A complaint of unequal treatment, however, cannot rest simply on the existence of discretion alone. Clark and Edmonson attacked the coexistence of alternative charging procedures, one providing and the other denying a preliminary hearing at the choice of the prosecutor, as intrinsically denying defendants the equal protection of the laws, on the grounds that led the Supreme Court of California in *Hawkins v. Superior Court,* 22 Cal3d 584, 150 Cal Rptr 435, 586 P2d 916 (1978) to order that indicted defendants must be afforded preliminary hearings equally with those charged by information. *State v. Clark* rejected that wholesale attack. It recognized that preliminary hearings were an important privilege to which one accused of crime is entitled "upon the same terms" as others: "There is no question that the opportunity of a preliminary hearing is a 'privilege' within the meaning of the constitutional guarantee, and potentially one of great practical importance." 291 Or at 241.[3] But "upon the same terms" does not mean that

---

[3]

"At the preliminary hearing a panoply of procedural guarantees protect the person's right to contest the evidence of probable cause that he has committed a felony and his right not to become a witness against himself. These include the right to the aid of counsel, ORS 135.070, 135.075; the right to subpoena witnesses, ORS 135.085; cross-examination of adverse witnesses, ORS 135.090; the right to make an unsworn statement subject only to limited questioning by the magistrate, ORS 135.095, 135.100; and ultimately, the right to the judgment of a trained judicial officer whether probable cause for the prosecution has been shown, based on evidence which the person to be charged could challenge or meet by opposing evidence or by his own statement, if he chose to do so. ORS 135.175, 135.185.

"No comparable procedural rights are accorded a person charged before a grand jury . . . .

"Unquestionably the procedures afforded in a preliminary hearing are potentially important to an accused, whether or not they are advantageous in a particular instance. In theory, at least, the preliminary hearing is designed to make it impossible for an accused to avoid defending against an unjustified charge, even if more often it only permits him to learn something of the prosecution's case against him that would be hidden in grand jury secrecy."

291 Or at 234-235 (footnote omitted).

The ALI's Model Code of Pre-Arraignment Procedure, § 330.1(1), would provide that every person charged with a felony "shall have a right to a preliminary hearing to determine whether there is sufficient evidence to proceed to trial," even when there is an indictment. The comment to this provision states that:

every accused must be afforded a preliminary hearing or none can be. The preliminary hearing itself is not constitutionally required where probable cause to prosecute is shown to the satisfaction of a grand jury. "The two methods are capable of valid administration, if the 'terms' on which one or the other method is used are defensible under the constitutional guarantees of equal treatment." *State v. Edmonson,* 291 Or at 253.

Finally, *State v. Clark* held that defensible terms of valid administration need not be promulgated as rules, although of course they might take that form. 291 Or at 246.[4] But the standards or criteria used, whether or not stated as rules, must pass muster under those guarantees of equal treatment. 291 Or at 239-240.

## II. *Consistent application of discretionary policies.*

Because *Clark* and *Edmonson* only rejected an attack on the dual system of felony prosecution as inherently unequal, holding that the system could withstand this attack if administered to provide equal privileges to persons similarly situated, those decisions could offer little guidance upon what terms the privilege of a preliminary hearing must "equally belong to all citizens." The present case, in which the challenge is to the terms upon which the prosecution based its refusal of a preliminary hearing to defendant, calls for a further analysis.

■ The provision allowing alternative ways to charge was added to the constitution in 1974. Article VII, section 5(5) provides:

> "the prosecutor would not be able to cut off the defendant's right to a preliminary hearing by securing an indictment.
>
> "Because of the importance the Code puts on the screening function of the preliminary hearing and because of the value of the preliminary hearing as a discovery method in a system that does not provide for depositions in criminal cases . . ., the grand jury indictment is not an adequate or fair substitute for a preliminary hearing."

Model Code of Pre-Arraignment Procedure § 330.1 commentary at 592-593 (1975). *See also* Standards for Criminal Justice 3-3.10 and commentary (2d ed 1982).

[4] *See, e.g.* Beck, *The Administrative Law of Criminal Prosecution: The Development of Prosecutorial Policy,* 27 Am U L Rev 310, 313-21 (1978) (describing United States Attorneys' Manual). Published policies to guide prosecutorial discretion are recommended by Standards for Criminal Justice 3-2.5 (2d ed 1982), Nat. Dist. Atty. Assoc., National Prosecution Standards 6.1 (1977), and National Advisory Commission on Criminal Justice Standards and Goals; Courts, Standards 3.3, 12.7 (1973).

"The district attorney may charge a person on an informa-
tion filed in circuit court if, after a preliminary hearing before
a magistrate, the person has been held to answer upon a show-
ing of probable cause that a crime punishable as a felony has
been committed and that the person has committed it, or if the
person knowingly waives preliminary hearing."

It is undisputed that this provision was meant to leave discre-
tion to choose between the two procedures to the district
attorney. According to the explanations in the Official Voters'
Pamphlet, the proposed system was "based on the discretion
of the district attorney" so as to assure "that each county can
follow the system best suited to its needs." 1974 Official Voters
Pamphlet 14-15. The committee designated pursuant to ORS
254.210, in its explanation, stated:

"The proposed change keeps the traditional grand jury
function in our system of criminal justice but makes it possible
to use it in a more flexible manner within the limited discre-
tion of the district attorney."

*Id.* at 13. The change was designed to reduce the previously
mandatory use of grand jury indictments so as to promote both
"efficiency" and also "fairness." *Id.* at 14.

It is because of this background that reasons of effi-
ciency are permissible criteria for the choice between the alter-
native procedures and that, although the criminal code and
article I, section 20, apply throughout the state, each county or
district remains free, in the absence of statute, to choose the
charging practices most suitable for its circumstances and to
change them as experience may dictate. As the Voters Pam-
phlet clearly stated, however, the objective of the 1974 amend-
ment was to promote "fairness" as well as "efficiency." It
therefore does not support the notion that discretion under
article VII, section 5(5), described in the committee's state-
ment, *supra,* as "limited discretion," somehow is immune from
the restraint against haphazard, purely *ad hoc,* use of discre-
tion that article I, section 20, imposes on the administration of
other privileges or immunities.

A charge that one has committed a felony and should
undergo a trial on the charge is, short of a conviction and sen-
tence, the gravest act by which the state confronts one of its

citizens.[5] Whether or not a conviction follows, prosecution alone imposes heavy burdens on the defendant. Unlike many other programs offering benefits or privileges only to applicants that nonetheless must be designed and administered so that they "upon the same terms . . . equally belong to all citizens," prosecution for crime proceeds at the will of the prosecutor. The laws do not give the accused any role in choosing the procedure beyond perhaps speeding the process by waiving indictment or preliminary hearing. Or Const art VII (am), § 5(4), (5). The importance of administering such protections as the process affords on equal terms in similar circumstances therefore is even greater than it is in the administration of such other programs.

■ The circuit court concluded that the process had not been so administered in this case. The circuit court relied on our statement that a constitutional claim for equal treatment is made out when the accused shows that preliminary hearings are offered or denied "to individual defendants, or to social, geographic, or other classes of defendants . . . purely haphazardly or otherwise on terms that have no satisfactory explanation under art I, § 20." *State v. Edmonson,* 291 Or at 254. As noted above, the statement encompasses two distinct tests under article I, section 20. "Haphazard" or standardless administration, in which the procedure is chosen *ad hoc* without striving for consistency among similar cases, differs from impermissible classification, because a systematic practice of following one or the other procedure in identifiable types of cases or circumstances itself reflects some articulable policy toward classes of cases. The quoted reference in *Edmonson,* above, to "social, geographic, or other classes of defendants" only relates to the validity of such a policy. An individual challenging purely *ad hoc,* unsystematic use or denial of one or the other procedure need not show that he has been discriminated against on grounds that would be invalid if they were the basis of a systematic policy.[6]

---

[5] In following the constitutional use of the term "citizen" here, we do not imply that an individual's right to equal procedures depends on citizenship.

[6] A federal court has held that "bad faith" need not be shown in order to attack a prosecutor's unexplained exercise of standardless discretion to the prejudice of a particular defendant. *See McMorris v. Israel,* 643 F2d 458, 463-464 and n. 15 (7th Cir 1981), *cert den* 455 US 967, 102 S Ct 1479, 71 L Ed 2d 684 (1982) (unexplained refusal to stipulate under Wisconsin law to use of polygraph).

The question, then, is whether a prosecutor's use of the two charging procedures adheres to sufficiently consistent standards to represent a coherent, systematic policy, even when not promulgated in the form of rules or guidelines. Our rejection of the equal protection attack made upon the dual system in *Clark* and *Edmonson* rested on the assumption that "[t]he two methods are capable of valid administration," and that courts can determine whether they are so administered. If that assumption fails, and administration of the system "upon the same terms" toward similarly situated defendants cannot be assured, the premise of *Clark* and *Edmonson* also would fail.

Given that premise, however, many kinds of reasons for proceeding with or without a preliminary hearing are valid if consistently applied. Different procedures for charging different crimes are an example. Persons charged with traffic crimes, for instance, are not a different "class of citizens" from persons charged with assault, or theft, unless a defendant can show that a distinction in charging such crimes in fact is designed to discriminate for or against some identifiable social group.[7] Without such a showing, a choice of charging procedure by type of offense would not be an unconstitutional classification if it were prescribed by law, and it therefore is not unconstitutional if adopted as a consistent prosecutorial policy.

At the other extreme, no one doubts that it would violate article I, section 20, to grant or deny a preliminary hearing because an accused is of Oriental or Native American descent,

---

[7] On reargument as well as initially, defendant phrased his attack on the reasons given by the state in terms of "classes" of defendants whose cases have the characteristics that are said to explain the grant or denial of a preliminary hearing. Those reasons really refer to the circumstances of various cases, not to membership in one or another "class of citizens." *State v. Clark, supra,* 291 Or at 237-43. We have recently emphasized the distinction between laws directed at citizens "classified" by personal characteristics and "classes" formed only by the statute in question. *Compare Cole v. Dept. of Revenue,* 294 Or 188, 191-92, 655 P2d 171 (1982) (persons appealing income tax assessments are not a "class of persons" apart from the law at issue) *and Norwest v. Presbyterian Intercomm. Hosp.,* 293 Or 543, 567-68, 652 P2d 318 (1982) (children who can sue for fatal injuries to parents are not a "class"), *and State v. Clark, supra,* 291 Or at 243 (defendants accorded preliminary hearing are not a "class"), *with State ex rel Adult & Family Services v. Bradley,* 295 Or 216, 223, 666 P2d 249 (1983) (children born out of wedlock are a "class of persons" apart from the law at issue), *and Hewitt v. SAIF,* 294 Or 33, 45-46, 653 P2d 970 (1982) (persons of one gender are a "class"). The issue in this case is not one of impermissible classification of citizens but whether the prosecutor follows adequately consistent practices that justify granting or denying the privilege of a preliminary hearing to defendant and others as individuals.

or an immigrant, or of a particular religious denomination, or of one or the other gender. *See State v. Clark, supra,* 291 Or at 240, 242, *Hewitt v. SAIF, supra.* The same would be true of doing so because of the prosecutor's personal like or dislike for an accused, *People v. Walker,* 14 NY2d 901, 252 NYS2d 96, 200 NE2d 779 (1964), *on remand* 50 Misc2d 751, 271 NYS2d 447 (1966), or for the accused's counsel, *cf. In re Rook, supra,* or because the accused did not accede to or cooperate with some extraneous demand of the prosecutor, *cf. MacDonald v. Musick,* 425 F2d 373 (9th Cir), *cert den* 400 US 852 (1970); *Dixon v. District of Columbia,* 394 F2d 966 (DC Cir 1968).

■ Other types of reasons to grant or deny preliminary hearings stand or fall by analogy to these more obvious examples. A consistent practice of proceeding by one or the other method in counties where courts for conducting preliminary hearings are distant or where there are long intervals between grand jury sessions would not reflect discrimination against one or against an identifiable kind of accused.[8] Nor, for similar reasons, would a consistent policy to save needless strain or travel and inconvenience for particularly infirm or distant witnesses. More like impermissibly singling out individual defendants, on the other hand, would be a practice of denying preliminary hearings whenever a prosecutor wants only to improve his chances of conviction in a particular case by shielding witnesses from preliminary examination. Such a practice cannot be said to afford the privilege "upon the same terms [equally] to all citizens," as article I, section 20 prescribes, without making nonsense of that principle.

■ We do not go beyond these examples to decide hypothetical issues not now before us, but the foregoing should serve to indicate the analysis. None of this means that the choice of charging procedure is not within the discretion of the district attorneys throughout the state. The law presently

---

[8] *State v. Clark* recognized that when policies are legally delegated to local agencies, different policies might apply in different counties, provided that each local practice itself is applied consistently with art I, § 20. Under such delegation, different practices in different counties do not grant or deny persons equal treatment provided that any person, resident or nonresident, is treated equally "upon the same terms" within the county. 291 Or at 241, *citing City of Klamath Falls v. Winters,* 289 Or 757, 619 P2d 217 (1980) *app dis* 451 US 964, 101 S Ct 2037, 68 L Ed 2d 343 (1981); *Olsen v. State ex rel Johnson,* 276 Or 9, 554 P2d 139 (1976); *Bock v. Bend School Dist. No. 1,* 252 Or 53, 448 P2d 521 (1968); *State v. Kincaid,* 133 Or 95, 103, 105, 285 P 1105, 288 P 1015 (1930); *State ex rel Bell v. Frazier,* 36 Or 178, 188, 59 P 5 (1899).

gives them the discretion to proceed by information and pre-liminary hearing or by grand jury indictment. Article I, section 20, requires only that the choice be made by permissible criteria and consistently applied, so as to afford preliminary hearings to similarly situated defendants "upon the same terms." Discretion to choose a policy is not incompatible with consistency in practice. As one major study of prosecutorial discretion put it:

> "That there should be consistent and evenhanded treatment of individuals within the framework of our legal system is such a commonly accepted notion that it hardly merits discussion and analysis. . . ."

> "In its most elementary form, consistent and even handed treatment means that individuals in like circumstances will be treated alike. . . ."

Abrams, *Internal Policy: Guiding the Exercise of Prosecutorial Discretion,* 19 UCLA L Rev 1, 4 (1971). The challenge for the prosecutor, Professor Abrams continues, "is to articulate the factors taken into account by him, sometimes intuitively, in exercising his discretion." *Id.*[9] Or, as Justice Tanzer wrote in another connection while on the Court of Appeals: "We recognize the wide discretion vested in the commission . . ., but that discretion is not unbridled. It is discretion to make policies for even application, not discretion to treat each case on an ad hoc basis." *Sun Ray Dairy v. OLCC,* 16 Or App 63, 72, 517 P2d 289 (1973).[10] This led the court in that context to require the promulgation of written standards by rules.

---

[9] Professor Abrams's study, like many others, concentrates on the prosecutor's discretion to decide whether to prosecute at all. A number of decisions have invalidated selective enforcement of criminal laws, *e.g. State v. Vadnais,* 295 Minn 17, 202 NW2d 657 (1972) (types of trailer houses); *Simonetti v. City of Birmingham,* 55 Ala App 163, 314 So2d 83, *cert den* 294 Ala 192, 314 So2d 99 (1975); *People v. Acme Markets,* 37 NY2d 326, 372 NYS2d 590, 334 NE2d 555 (1975) (both involving Sunday closing laws).

[10] The case involved discretion to grant or deny licenses to sell liquor, and the opinion noted:

> "In this case, for example, the applicant introduced evidence of several similar businesses in the area which had package licenses. There is no way for him or for us to know whether he was singled out for discriminatory treatment or whether he was subjected to the same policy standards which were employed when the other comparable outlets were licensed and renewed."

*Id.,* 16 Or App at 72.

▆ When discretion in the prosecution process is reflected in internal rules or guidelines, this of course serves to facilitate consistent practices. It also serves to direct possible challenges to the validity of the criteria used, which are likely to be within the range of discretion, rather than to the standardless and haphazard, *ad hoc,* character of the choice in individual cases. Nevertheless, as stated above, our decisions in *Clark* and *Edmonson* and in this case do not go so far. Even without predetermined rules or guidelines, policies for "even application," assuring that "individuals in like circumstances will be treated alike," can develop from consistency in practice, and consistency in practice can be both furthered and shown to exist if case files adequately reflect the reasons for making one or another choice. *Cf. Dickinson v. Davis,* 277 Or 665, 561 P2d 1019 (1977) (discretion to mitigate sanctions must have explainable reasons).

The Oregon Law Enforcement Council, chaired by Attorney General Lee Johnson, noted the importance of conscious attention to the policies to be followed in making discretionary decisions.[11] Its report also recommended adequate case files to monitor these policies.[12]

---

[11] Oregon Law Enforcement Council, Proposed 1980 Standards and Goals at 82 (Draft 3, 1974) states:

"In exercising their functions, Oregon's prosecutors and their staff daily make a wide range of discretionary decisions regarding filing of criminal charges, plea negotiations, prosecution of cases, and sentencing recommendations. Inevitably, each district attorney develops certain policies which guide these decisions, although the policies may only be implicit in his actions or have been stated orally on one or more occasions, rather than being formally prepared and written out in detail.

"Because of the importance of these discretionary decisions, policies regarding them should be arrived at consciously with due attention to the viewpoints of the public and other participants in the criminal justice system. While the small prosecutor offices can perhaps operate without the availability of detailed written policies, offices with even as few as four attorneys are better assured uniform decision-making through the availability of formal, written policies."

[12] Oregon Law Enforcement Council, Criminal Justice System Goals and Standards for Oregon, Goal 2.030 (Draft IV, 1975). Standard 4 of Goal 2.050 would require written reasons for screening decisions.

The importance of maintaining and consulting records that reveal the reasons for discretionary choices is stressed by other experienced students of the subject. *See* Vorenberg, *Decent Restraint of Prosecutorial Power,* 94 Harv L Rev 1521, 1565-1566 (1981); Bubany, *Taming the Dragon: An Administrative Law for Prosecutorial Decision Making,* 13 Am L Rev 473, 499-501 (1976); National Advisory Commission on Criminal Justice Standards and Goals: Courts, Standards 1.2, 2.2 (1973). NDAA,

With this review of the relevant principles, we turn to the circuit court's decision in this case.

### III. *Lack of a consistent practice in this case.*

An information initially was filed against defendant on a charge of robbery in the second degree, and a preliminary hearing was scheduled for May 4, 1981. On May 1, however, a deputy district attorney sought and obtained from the grand jury an indictment on the same charge. Defendant was so informed at his district court appearance on May 4. He nevertheless requested a preliminary hearing, which was denied by the district court. He then filed in the circuit court a motion "for a preliminary hearing or to dismiss the indictment" and asked for a hearing in which to show that the denial of the preliminary hearing did not meet the standards indicated in *State v. Clark, supra,* and *State v. Edmonson, supra.*

At that hearing, on July 15, 1981, the court heard testimony from the District Attorney of Multnomah County and from the deputy district attorney to whom defendant's case was assigned concerning the practices by which the choice between proceeding with or without a preliminary hearing is made. The testimony was responsive but brief. The district attorney stated that the only written policy guidelines direct that preliminary hearings be avoided whenever possible in prosecutions for rape or sexual attack and cases involving a youthful victim. This is done out of consideration for the witness. All other decisions on preliminary hearings are "left to the discretion of the individual trial deputy, the court docket and the time in the preliminary hearing court." In practice, crimes against property but not against a person are taken before the grand jury when no one is in custody. When a suspect is arrested, however, as in the present case, a preliminary hearing is initially scheduled, but the assigned deputy may later decide to cancel the hearing and proceed by indictment.

---

National Prosecution Standards, *supra* n.4, Standards 8.4, 11.5, 16.6, and ch. 9 commentary at 132-33.

What begins as a customary practice may eventually be articulated as a guideline or directive. An example is the United States Justice Department's practice of notifying grand jury witnesses if they are "targets" of investigation, compliance with which became an issue in *United States v. Jacobs,* 531 F2d 87 (2d Cir), *vacated* 429 US 909, 97 S Ct 299, 50 L Ed 2d 277, *reaff'd* 547 F2d 772 (1976), *cert dism* 436 US 31, 98 S Ct 1873, 56 L Ed 2d 53 (1978); *see* Beck, *supra* n. 3, 27 Am U L Rev at 372-373 (1978).

According to the district attorney, differences between defendants enter the choice of procedure primarily in predicting whether to anticipate a plea of guilty or a trial: "Obviously, [if] there would be a high risk defendant or a high profile defendant, we probably would avoid a preliminary hearing if possible." One consideration might be to minimize opportunities to cross-examine witnesses, because "anyone who has tried cases knows that a past reported statement can be turned into a past inconsistent statement." Another consideration might be to avoid a "tainted" eyewitness identification of the defendant alone at the preliminary hearing rather than from among several persons in a line-up. The district attorney also mentioned "the docket on a given day at a given time in the preliminary hearing court" and the availability of witnesses, the prosecutor, and defense counsel for the hearing. The choice of procedure is in the discretion of the assigned deputy. No tabulations correlating types of cases or defendants with the charging procedures are kept, and none were compiled and submitted in this case.

The deputy district attorney's testimony gave even more weight to administrative or what he called "logistical" reasons. Some of these arise from the division of work in the office. Because in that office preliminary hearings are handled by one deputy, that deputy's inadequate time to prepare a case leads to taking it instead to the grand jury. Similarly, the relatively short time allowed in a preliminary hearing in Multnomah County leads to taking to a grand jury cases in which the deputy expects to call more than the minimal number of witnesses. These were among the reasons for canceling the scheduled preliminary hearing in this case. The character of the offense did not play a role; some persons charged with robbery are given a preliminary hearing while others, like this defendant, are not.

The circuit court found that these reasons did not meet the constitutional requirement that preliminary hearings be allowed "upon the same terms" to similarly situated citizens under the principles of *Clark* and *Edmonson*. The court wrote an opinion which summarized the testimony of the district attorney and deputy district attorney reviewed above. The court stated:

"Based upon this record, and applying the holdings of the Supreme Court in *Clark* and *Edmonson, supra,* as I understand them, it is my opinion that in Multnomah County 'the choice between prosecution by information and preliminary hearing or by indictment [does not] uniformly rest on meaningful criteria that indeed make the privileges of a preliminary hearing equally available to all persons similarly situated or, in the constitutional phrase, "upon the same terms." ' Instead, since the decision is made primarily at the discretion of the prosecution who bases his decision upon 'logistical' and 'tactical' criteria, the choice of procedure is administered 'purely haphazardly or otherwise on terms that have no satisfactory explanation under Art I, § 20.' *State v. Edmonson, supra,* 291 Or at 254. Therefore, I hold that defendant has been denied an equal privilege and equal protection in violation of Art I, § 20, Oregon Constitution and the fourteenth amendment to the U. S. Constitution." (Brackets in original).

On the record before the court, this ruling was not error. It is true that this defendant does not complain of discriminatory treatment on the basis of his personal characteristics. Nothing in the record suggests prejudice or bad faith on the part of the prosecutor. The Court of Appeals reversed because it thought that we required such a motive for improper discrimination, although it conceded that the circuit court's reading of *Clark* and *Edmonson* might be correct. 58 Or App at 171. We agree with the circuit court that even without such *ad hominem* discrimination, the present case falls within the principle that equal treatment may not be denied "haphazardly" by *ad hoc* decisions that, as the court quoted from 291 Or at 254, do not "uniformly rest on meaningful criteria that indeed make the privileges of a preliminary hearing equally available to all persons similarly situated, or, in the constitutional phrase, 'upon the same terms.' "

As the witnesses explained the manner in which the choice is made, one person accused of participating in a robbery might be afforded a preliminary hearing and another, under otherwise identical circumstances, might be denied such a hearing merely because the assigned deputy did not wish to subject his witnesses to cross-examination. Also, the charging procedure might be changed up to the last minute for the convenience of a witness, or of the district judge, or of the prosecutor himself. A scheduled preliminary hearing might be canceled and a grand jury indictment substituted merely because

the prosecutor is not ready or believes there is insufficient time on the calendar to complete the hearing. We intend no criticism of the witnesses testifying in this case; no doubt the two charging procedures were widely thought to be simply alternative tools in the hands of prosecutors until the compatibility of that view with constitutional standards of equal treatment was challenged in *Clark* and *Edmonson*. Once those standards are applied, however, it is clear that such day-by-day "logistical" circumstances as the readiness of the prosecutor or the coincidence of an empty courtroom or a crowded hearing calendar cannot determine the grant or denial of an important procedural step in the defense against a criminal prosecution, if the assurance that privileges must be provided "upon the same terms" is to have any meaning.[13] They fail the test of "discretion to make policies for even application, not discretion to treat each case on an ad hoc basis." *Sun Ray Dairy v. OLCC, supra.* The circuit court did not misapply article I, section 20, in so holding.

To allay misapprehension, perhaps a further comment is in order. In dicta at the end of his opinion, the able trial judge expressed concern about the possible consequences if his application of *Clark* and *Edmonson* were taken to mean that all potential criminal defendants in Multnomah County were entitled to preliminary hearings. *Clark* and *Edmonson* did not so hold, nor, as we have made clear, does the present decision. *Clark* and *Edmonson* rejected such a claim on the assumption that it is possible to administer the dual charging system so as to provide equal treatment for persons similarly situated. We continue to assume that this can be done consistent not only with article I, section 20, but also with federal equal protection standards. As we have noted, all there was before the circuit court and is before this court on the present record is the brief testimony given in this case. We do not generalize on this record that charging procedures in Multnomah County may not in other cases conform to required standards of consistent

---

[13] As defendant points out, the United States Supreme Court repeatedly has held that under the 14th amendment mere administrative convenience cannot justify what otherwise would be a denial of equal protection of the laws. *Craig v. Boren,* 429 US 190, 198, 97 S Ct 451, 50 L Ed 2d 397 (1976); *Frontiero v. Richardson,* 411 US 677, 684, 93 S Ct 1764, 36 L Ed 2d 583 (1973); *Reed v. Reed,* 404 US 71, 75-76, 92 S Ct 251, 30 L Ed 2d 225 (1971).

practice, or that they cannot readily be brought into conformity. This may already have been done since the denial of a preliminary hearing here at issue, which occurred shortly after *Clark* and *Edmonson* were decided. Also, as stated above, the choice of consistent procedures, and the factors that may go into the choice, may well be quite different in counties with different case loads and conditions of access to preliminary hearing courts and to grand juries compared with the conditions in Multnomah County.

## IV. *The court's order.*

There remains the question whether the court's order dismissing the indictment was a correct remedy for what the court found to be an unconstitutional denial of a preliminary hearing.

Defendant does not claim that there is any flaw in the indictment or that it was not found by proper grand jury procedure. What is challenged here on grounds of constitutionally unequal administration is not that the prosecution obtained an indictment but that it refused a preliminary hearing. The two steps are not intrinsically incompatible. *See,* Model Code of Pre-Arraignment Procedure, *supra* n. 3. What defendant requested, first in the district court and then in the circuit court, was a preliminary hearing. He moved for dismissal of the indictment only as an alternative in case the preliminary hearing was not provided. The circuit court first signed an order on September 28, 1981 "that the state must schedule and hold a preliminary hearing within thirty (30) days of this date or the indictment will be dismissed."[14] Upon a further motion of the defendant stating that by October 28, 1981, no preliminary hearing had been held, the court ordered the indictment dismissed.

---

[14] The order also specified that the hearing should be held in circuit court.

Different statutes use the words "set aside" the "indictment," ORS 135.510(1), or "dismiss" the "information," ORS 135.175, the "accusatory instrument," ORS 135.470, 135.520, 135.705(1), 135.747, the "prosecution," ORS 135.745, the "dismissal [of a] charge or action," ORS 135.753, or the "proceedings," ORS 135.755. The terms "accusatory instrument" and "information" as used in these statutes, are defined in ORS 131.005(1), (10). Courts also have referred to a motion to "quash" the indictment; *see State v. Justus,* 11 Or 178, 180, 8 P 337 (1883).

There was considerable discussion of this procedure between the prosecutor and the circuit court. As the indictment itself was not challenged, the correct procedure, rather than dismissing the indictment, would have been to stay further proceedings under it until the state proceeded with a preliminary hearing or the defendant waived such a hearing. Dismissal then would be governed by the standards of ORS 135.747 and 135.750. In the circuit court, the prosecutor expressly stated at the beginning of the hearing that dismissal would be proper if the court agreed with defendant's position and the state decided not to proceed with a preliminary hearing. The court followed the suggestion of the parties, and the question was not pursued on appeal. It therefore is not before us for decision.

The decision of the Court of Appeals is reversed, and the decision of the circuit court is affirmed.

**JONES, J.**, dissenting

I respectfully dissent.

The majority uses this case to revisit *State v. Clark,* 291 Or 231, 630 P2d 810, *cert den* 454 US 1084 (1981), and *State v. Edmonson,* 291 Or 251, 630 P2d 822 (1981). In *Clark,* the court was unable to resist the temptation to discuss issues involved in the case on a broader basis than the record imperatively required. *See, Street v. New York,* 394 US 576, 581, 89 S Ct 1354, 22 L Ed 2d 572 (1969).

If dicta had force of law, I could perhaps understand the preoccupation of the majority with *Clark* and its progeny, *Edmonson.* It does not, and I object to "unnecessarily broad dicta," *United States v. Knotts,* 51 USLW 4232, 4236 (1983), which merely serves to confuse analysis. In providing guidance to other courts, I recognize we often include in our opinions material that, technically, constitutes dicta. However, *Clark, Edmonson* and this case do not require such dicta to resolve the issues involved.

I believe the goal of the majority opinion is desirable. The achievement of this goal will produce better justice and judicial administration. Defendants charged by information and scheduled for preliminary hearings will not be indicted at the last moment leaving prosecution and defense witnesses in uncertainty as to when and where they are to testify. It will

relieve the confusion of defendants being told their case has been dismissed at a preliminary hearing, only to be arrested and often jailed because of an indictment handed down days later. It will help defense counsel in scheduling appearances and relieve counsel of the need to prepare for a hearing that never occurs. However, all of this can be corrected by needed and proper legislation or constitutional amendment. I dissent because it is not the role of this court to take two perfectly valid and constitutional methods of charging approved by a mandate of the people and warp legal reasoning to obtain a desired result.

## GRAND JURY V. PRELIMINARY HEARING

The defendant was indicted by a grand jury. He does not contest the validity of the indictment but claims the denial of a preliminary hearing deprived him of equal treatment under the law. In my view, the defendant was not entitled to a preliminary hearing for the reasons which follow.

At least 30 states have granted prosecuting attorneys discretion to initiate felony prosecutions by either grand jury indictment or information and preliminary hearing.[1] The prosecutor's authority is derived variously from the state's constitution or by statute. In Oregon, a search of ancient history or probing constitutional analysis is not required to discern the source of the prosecutor's discretion to initiate criminal prosecutions by submission to the grand jury for indictment or alternatively by the filing of an information. In 1974, the people adopted an amendment to the Oregon Constitution which in no uncertain terms conveyed wide discretionary powers to the prosecutor in the selection of charging methods. Article VII, Sections 4, 5 and 6, provides in part:

"(4) The district attorney may charge a person on an information filed in circuit court of a crime punishable as a felony if the person appears before the judge of the circuit court and knowingly waives indictment.

"(5) The district attorney may charge a person on an information filed in circuit court if, after a preliminary hearing before a magistrate, the person has been held to answer upon a

---

[1]See Case Note: *Criminal Procedures - Grand Jury - Constitutional Law - Equal Protection - Due Process - Prosecutor's Duty to Expose Exculpatory Evidence to the Grand Jury,* 27 Case W Res L Rev 580, n 54 (1977).

showing of probable cause that a crime punishable as a felony has been committed and that the person has committed it, or if the person knowingly waives preliminary hearing.

"(6)    An information shall be substantially in the form provided by law for an indictment. The district attorney may file an amended indictment or information whenever, by ruling of the court, an indictment or information is held to be defective in form."

In the Official Voter's Pamphlet prepared by the Secretary of State for the November, 1974, General Election the people were fully apprised of the broad discretionary power they were conferring on their elected district attorneys:

"The proponents believe that elimination of most grand jury proceedings is a desirable method of accomplishing greater efficiency in criminal cases. The grand jury is duplicative of the preliminary hearing step often employed in a criminal case. If such a preliminary hearing discloses that probable cause exists to proceed against the accused, there is no need for the grand jury to repeat the process of determining whether there is probable cause. In cases where the district attorney is himself in doubt as to probable cause to proceed, he may, under the proposed amendment, take such cases to the grand jury. He may also take any felony case to the grand jury, so that the district attorney in smaller, less busy counties may continue to employ the grand jury in all felony cases if he chooses. Thus, the proposed system, based on the discretion of the district attorney, assures that each county can follow the system best suited to its needs."

This constitutional amendment was enacted by the people with support from various groups closely connected with the justice system.

"* * * Groups on record in favor of this proposal include the Criminal Law Committee of the Oregon State Bar, the American Civil Liberties Union, the Oregon District Attorneys Association, and the Oregon Criminal Law Revision Commission." Official Voters' Pamphlet of Oregon, 1974 General Election, p 14.

Voters were advised by opponents that the measure would provide district attorneys with significant discretionary authority.

"But this measure does not abolish the Grand Jury and substitute a needed reform. Instead it allows the district

attorney to use this antiquated and unfair method at his option." *Id.* at 15.

This recent history evinces that no preliminary hearing following grand jury indictment was intended by the people nor was there an intent to require prosecutors to have standards, articulated or not, for their charging decisions.

This is not to suggest that prosecutors should have unbridled, runaway authority to charge as they please, without regard for invidious discrimination, fundamental rights or human dignity. But that is not the issue here, which the majority candidly notes: "Nothing in the record suggests prejudice or bad faith on the part of the prosecutor." 295 Or at 381.

This case calls for nothing more than an analysis of prosecutorial discretion applied to the instant facts.

The majority, as in *Clark,* cites *Hawkins v. Superior Court,* 22 Cal 3d 584, 586 P2d 916 (1978), where the Supreme Court of California analyzed the alleged procedural advantages afforded defendants prosecuted by information versus those who were indicted by a grand jury. In *Hawkins,* the California court ruled in a 5-2 majority that the prosecutor's decision to proceed by information or by grand jury indictment was totally discretionary and consequently the state had arbitrarily created a discriminatory classification for felony defendants.[2]

In *Clark,* this court seemingly rejected the *Hawkins* court's classification scheme with the following dicta:

"We do not follow the *Hawkins* court to the conclusion, however, that this difference between two available procedures necessarily represents a denial of equal protection of the laws, regardless of showing which defendants receive one or the other procedure. *Hawkins* reached this conclusion in 'classification' terms, by defining as two classes those who are indicted and those who are charged by information. But we think this is an example of the 'circular' use of the concept of 'class' mentioned above. The distinction to be tested is the use or nonuse of preliminary hearings. The 'classes' said to fail the

[2]Case Comments, *Constitutional Law - Equal Protection - Prosecution by Indictment Violates California Equal Protection Clause by Denying Accused Opportunity for Preliminary Hearing - Hawkins v. Superior Court, 22 Cal 3d 584, 586 P2d 916 (1978),* 13 Suffolk U L Rev 1482 (1979).

test of equal protection are the 'class' of those defendants who receive preliminary hearings (because charged by information) and the 'class' of those who do not (because indicted). But these defendants do not exist as categories or as classes with distinguishing characteristics before and apart from a prosecutor's decision how to charge one, or some, or all defendants. Aside from the manner in which the decision is made, *see City of Klamath Falls, supra,* 289 Or at 785-785 (Lent, J., dissenting), defendants charged under either procedure are 'classes' only as an effect of the dual procedural scheme itself. As in *City of Klamath Falls, supra,* 'these defendants [i.e. those who do not receive a preliminary hearing] are not denied such a "privilege" as individual persons, but only because they are members of a "class" of persons who are prosecuted [by indictment] as distinct from persons prosecuted [on an information.]' 289 Or at 776." *State v. Clark,* 291 Or at 242-43.

The court further elaborated the principles announced by *Clark* in *State v. Edmonson,* 291 Or at 253-54.

"* * * In *Clark,* we held that the simple coexistence of the two means of initiating a prosecution, by information with a preliminary hearing or by indictment without one, did not in itself grant to 'any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens,' as forbidden by Or Const art I, § 20. The two methods are capable of valid administration, if the 'terms' on which one or the other method is used are defensible under the constitutional guarantees of equal treatment. We held that the attack failed '[w]ithout a showing that the administration of Or Const art VII, § 5 and ORS 135.070-135.185 in fact denied defendant individually, or a class to which he belongs, the equal privilege of a preliminary hearing with other citizens of the state similarly situated.' *State v. Clark,* 291 Or at 243. For the same reason, we rejected defendant's claim under the 14th amendment. In other words, defendant's constitutional claim requires a showing how the choice of procedure is administered, and whether it offers or denies preliminary hearings to individual defendants, or to social, geographic, or other classes of defendants (apart from the 'classification' formed by the choice itself) purely haphazardly or otherwise on terms that have no satisfactory explanation under art I, § 20. *See, State v. Clark,* 291 Or at 241."

*Hawkins* received a strong dissent and was described by the dissenters as "a wholly novel proposition." *Hawkins* has since been discredited in every jurisdiction which has considered it, including Oregon (*Clark, supra*), *People v. Franklin,* 80

Ill App 3d 128, 398 NE2d 1071 (1979); *People v. Dist. Court for Second Judicial Dist.,* 610 P2d 490 (Colo 1980); *King v. Venters,* 595 SW2d 714 (Kentucky 1980); *Commonwealth v. Bestwick,* 489 Pa 603, 414 A2d 1373 (1980); *State ex rel Rowe v. Ferguson,* 268 SE2d 45 (W Va 1980). This substantial weight of judicial authority clearly determined the grand jury and the preliminary hearing are acceptable constitutional substitutes that can coexist without offending equal protection guarantees.

I must further point out that we considered *Hawkins* in a pre- *Clark* decision and rejected the California court's holding at that time. *See, State ex rel Automotive Emp. v. Murchison,* 289 Or 265, 611 P2d 1169 (1980) (Lent, J., dissenting).

*Clark* and *Edmonson* rejected the concept that the denial of a post-indictment preliminary hearing deprives a defendant of equal privileges under Article I, Section 20, of the Oregon Constitution. In my view a defendant is only entitled to a prompt probable cause determination, and I am prepared to say, and the majority does not deny, that the grand jury or an information/preliminary hearing procedure are equally reliable procedures for determining the probability of guilt. *Gerstein v. Pugh,* 420 US 103, 95 S Ct 854, 43 L Ed 2d 54 (1975). *accord People v. Franklin, supra,* 80 Ill App 3d at 131.

## PROSECUTORIAL DISCRETION

A prosecutor derives authority or power to exercise discretion by law.[3]

Few courts or legal scholars have applied due process or equal protection (or equal privileges) principles to the pre-accusation stage, *e.g.,* the charging decision, of the criminal process.[4] The plethora of procedural guarantees, *e.g.,* right to confront witnesses, subpoena power, public and fair trial, do not come into play in the pre-adjudicatory phase of the criminal process.

---

[3]*See generally* W. LaFave, *The Prosecutor's Discretion in the United States,* 18 Am J Comp L 532 (1970).

[4]*See* Kadish, *Legal Norm and Discretion in the Police and Sentencing Processes,* 75 Harv L Rev 904 (1962).

In the instant case we are only concerned with the possible abuse of the prosecutor's discretion in his selection of the charging method: grand jury indictment or information. This court discussed at great length the dimensions of a prosecuting attorney's discretion in *Watts v. Gerking*, 111 Or 654, 228 P 135, 34 ALR 1489 (1924):

> "Public policy favors prosecutions for crime, and requires that a person who in good faith and upon reasonable grounds institutes such proceedings upon a criminal charge shall be protected. The presumption of law is therefore that every prosecution for a crime is founded on probable cause and is instituted only for purposes of justice." 19 Am Eng Ency of Law, 650 (2nd ed). *Id.* at 656.

> "Their [prosecutors'] discretion is limited; but that — as a necessity — they do possess a discretion, is indisputable. In nearly every instance, they alone determine when, *how*, and who to prosecute or sue in the name of the state." *Id.* at 657 quoting *Farrar v. Steele*, 31 La Ann Rep 640 (Emphasis added).

Citing with approval, the court quoted the Supreme Court of Michigan in *Engle v. Chipman*, 51 Mich 524, 16 NW 886 (1883):

> "The prosecuting attorney is a very responsible officer, selected by the people and vested with personal discretion entrusted to him as a minister of justice, and not as a mere legal attorney. * * * He is expected to be impartial in abstaining from prosecuting as well as in prosecuting, and to guard the real interests of public justice in favor of all concerned. This discretion is official and personal." *Id.* at 657.[5]

The court said in *Clark* and *Edmonson* that there are many valid kinds of reasons for proceeding with or without a preliminary hearing if the reasons are consistently applied. I do not disagree.

The majority's notion that prosecutors should have articulated standards is not novel and was suggested by The

---

[5]In Michigan the issuance of an indictment is followed by a preliminary hearing at which the magistrate makes his own independent determination of probable cause. *See, People v. Duncan*, 388 Mich 489, 201 NW2d 629 (1972).

President's Commission on Law Enforcement and Administration of Justice in discussing charging discretion.[6] It was suggested that standards would cause discretion to be more structured and thus more rational.

> *"The need for established standards.* Standards should pertain to such matters as the circumstances that properly can be considered mitigating or aggravating, or the kinds of offenses that should be most vigorously prosecuted in view of the community's law enforcement needs."[7]

As Professor LaFave aptly put it:

> "The issue is not discretion versus no discretion, but rather how discretion should be confined, structured and checked."[8]

The 1974 constitutional amendment does not confer absolute power on prosecutors and I reject any premise that "[t]he discretion of the prosecutor * * * has been assumed to be subject to control only through the electorate rather than through a process of rationalization and accountability * * *."[9]

"Guided by considerations of justice," *McNabb v. United States,* 318 US 332, 341, 63 S Ct 608, 87 L Ed 819

---

[6]Among the American Bar Association's recommended standards for the prosecutor's function are:

"(d) The prosecutor should not seek a continuance solely for the purpose of mooting the preliminary hearing by securing an indictment." Standard 3.3.10(d).

and

"(a) Each prosecutor's office should develop a statement of:

(i) general policies to guide the exercise of prosecutorial discretion, and

(ii) procedures of the office.

"The objectives of these policies as to discretion and procedures should be to achieve a fair, efficient enforcement of the criminal law.

"(b) In the interest of continuity and clarity, such statement of policies and procedures should be maintained in an office handbook. This handbook should be available to the public, except for subject matters declared 'confidential,' when it is reasonably believed that public access to their contents would adversely affect the prosecution function." Standard 3-2.5.

[7]The President's Commission on Law Enforcement and Adminsitration of Justice, The Challenge of Crime in a Free Society, 33-34 (1967).

[8]W. LaFave, *The Prosecutor's Discretion in the United States,* 18 Am J Comp L 532, 536 (1971).

[9]Remington and Rosenblum, *The Criminal Law and the Legislative Process,* 1960 U Ill L Forum 481, 497.

(1943), this court may exercise its supervisory powers if a prosecutor acts in the words of the majority "purely haphazardly or otherwise on terms that have no satisfactory explanation," 295 Or at 374 citing *Edmonson,* 291 Or at 254. As stated in the recent case of *United States v. Hasting,* 461 US 499, 103 S Ct 1974, 76 L Ed 2d 96, 104 (1983) (discussing harmless error):

> "The purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights, *McNabb, supra,* 318 US at 340, 87 L Ed 819, 63 S Ct 608; *Rea v. United States,* 350 US 214, 217, 100 L Ed 233, 76 S Ct 292 (1956); to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, *McNabb, supra,* 319 US at 345, 87 L Ed 819, 63 S Ct 608; *Elkins v. United States,* 364 US 206, 222, 4 L Ed 2d 1669, 80 S Ct 1439 (1960); and finally as a remedy designed to deter illegal conduct, *United States v. Payner,* 447 US 727, 735-736, n 8, 65 L Ed 2d 468, 100 S Ct 2439 (1980)."

Recognizing the district attorney's substantial discretionary powers and the supervisory power of this court to review this discretion when allegations of abuse arise, I now turn to the instant case.

## FACTUAL CONSIDERATIONS

In this case, the defendant argues that an unequal procedure was used in the district attorney's charging method which prohibited him from being treated "upon the same terms" as similarly situated defendants. By so claiming, he hopes to leap the factual moat that *Clark* and *Edmonson* were unable to bridge. *Clark* and *Edmonson* focused their challenge on the coexistence of alternative charging methods seeking support for their argument from *Hawkins.* This court rejected that argument. "The two methods are capable of valid administration, if the 'terms' on which one or the other method is used are defensible under the constitutional guarantees of equal treatment." *State v. Edmonson,* 291 Or at 253.

In dicta, the *Clark* majority suggested that it would be possible to achieve substantially greater equality by the development of uniform policies. *Id.* at 239-40.

Defendant herein claims the district attorney's selection of the charging method is the result of "haphazard" or

"standardless administration." This, defendant argues, demonstrates the "state's policies are not being applied neutrally to similarly situated individuals."[10]

What the defendant is really criticizing, I believe, is the fact that the prosecutor in this case effectively "mooted"[11] the preliminary hearing by seeking a grand jury indictment. This practice is certainly not unique to Oregon, *see Buchanan v. State,* 561 P2d 1197 (Alaska 1977) (if the prosecutor desires to avoid a preliminary hearing, he could refuse to introduce evidence at the hearing, resulting in a dismissal of the complaint, and then obtain an indictment shortly thereafter).

Professors Kamisar, LaFave and Israel have discussed this practice and find no grounds for condemnation:[12]

"* * * In most information states, where the prosecutor uses the indictment process, his basic objective is not to avoid the preliminary hearing, but to utilize some other feature of that process. The mooting of the preliminary hearing is simply an incidental by-product of an unrelated objective that required a pre-arrest indictment. But prosecutors in·other information jurisdictions have been known to use the indictment alternative in certain cases mainly because they wanted to avoid the preliminary hearing. Grounds typically advanced for avoiding the hearing in those cases, notwithstanding the prosecutor's usual preference for prosecution by information, include: (1) the desire to save time where the preliminary hearing would be protracted due to the number of exhibits or witnesses or the number of separate hearings that would have to be held for separate defendants (the grand jury could save time in such situations due to the absence of cross-examination, less stringent application of evidentiary rules, and its capacity to consider a series of related cases in a single presentation); (2) the desire to preclude the defense discovery inherent in a preliminary hearing, particularly where a key witness is an informer whose identity should be shielded until trial; and (3) the desire to limit the number of times that a particular

---

[10]*See* Comment, *Prosecutorial Discretion in the Initiation of Criminal Complaint,* 42 S Cal L Rev 519, 545 (1969).

[11]*See, Preliminary Hearings in Homicide Cases: A Hearing Delayed is a Hearing Denied,* 62 J Crim L C & P S, 17 (1971).

[12]Y. Kamisar, W. LaFave, J. Israel, Modern Criminal Procedure, 981 (5th Ed 1980).

complainant (e.g., a victim of a sex offense) will be required to give testimony in public. * * *"

I do not reject the defendant's contention that preliminary hearings are, or may be, advantageous to an accused. There can be little argument that the defendant has an opportunity, albeit remote, to gain a dismissal of unsubstantiated charges at the preliminary hearing. The defendant also may acquire information about the state's case and the identity of the witnesses. However, these advantages, if any there be, "are entirely incidental to the purpose" of the preliminary hearing, namely and exclusively the determination of probable cause. *Accord, State v. Jefferson,* 79 Wash 2d 345, 349, 485 P2d 77 (1971).

The defendant's main contention is that the prosecutor's decision to proceed by indictment violated equal protection principles because he was denied individually (as opposed to a member of a protected class), the equal "privilege" of a preliminary hearing that other similarly situated defendants enjoyed.

The guarantee of "equal protection of the laws is a pledge of the protection of equal laws." *Yick Wo v. Hopkins,* 118 US 356, 369, 6 S Ct 1064, 30 L Ed 220 (1886). "When the law lays an unequal hand on those who have committed intrinsically the same quality of offense * * * it has made as invidious a discrimination as if it had selected a particular race or nationality for oppressive treatment." *Skinner v. Oklahoma,* 316 US 535, 541, 62 S Ct 1110, 86 L Ed 1655 (1942).

In the present case, the record is devoid of evidence to indicate that the prosecutor selected the defendant for indictment on the basis of some discriminatory motive such as race, religion or other arbitrary classification. The record indicates a proper exercise of discretion. *See, Oyler v. Boles,* 368 US 448, 82 S Ct 501, 7 L Ed 2d 446 (1962) ("the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation").

## STANDARDS

The court is faced with the inquiry whether a prosecuting attorney is required to articulate standards for his

selection of the charging method. I have found no state which has placed this burden on its prosecutors.[13]

---

[13]*See* footnote 5, *supra;* see also Multnomah County Policy Manual, 3.15 (March 1982):

*"Grand Jury/Preliminary Hearing*

"Amended Article VII §5 of the Oregon Constitution provides two separate procedures for charging defendants in Circuit Court. Amended Article VII provides that defendants may be charged either through indictment by the Grand Jury or by Information of District Attorney after Preliminary Hearing. The decision to present a case to the Grand Jury or to a Preliminary Hearing judge is expected to be made by the issuing deputy on a case-by-case basis. It is expected that the issuing deputy will consider the following factors when deciding which procedure to pursue:

A. Privacy needs of the victim, especially in instances of Sodomy, Rape or Child Abuse;

B. Whether the defendant has been arrested. For non-custody cases, direct presentation to Grand Jury is appropriate;

C. Need to protect complex investigation from premature disclosure, i.e., sting operations;

D. Need for speedy trial. Use of Grand Jury eliminates several days of delay between arrest and trial. This permits swift prosecution of career criminals.

E. Complexity of the case. The Grand Jury schedule is more flexible than the district court docket and allows for better presentation. For this reason, homicides, serious assaults and similarly complex cases should be presented to the Grand Jury.

F. Need to compel testimony in complex investigations. The Grand Jury can be convened over lengthy periods;

G. Need to use affidavits of seriously injured or unavailable victims under ORS 132.320(3);

H. Need to use certificate evidence to accommodate experts under ORS 132.320(2);

I. Convenience of victims and the need to accommodate witnesses' schedules;

J. Whether the defendant is out of the state and extradition is expected. Indictment by Grand Jury is normally appropriate in extradition cases to avoid legal complications which alternative charging instruments may risk;

K. Need to have citizen input in issuing decisions. It may be important to see citizen reaction (as opposed to lawyer or judicial reaction) in the Grand Jury before deciding merits of case.

"This policy is intended to provide guidance in deciding which constitutional charging vehicle to use. The list is not intended to be all-inclusive."

(These guidelines were put in written form ex-post facto.)

When confronted with fact questions similar to the present case other jurisdictions have not required articulated standards as a remedy for any possible abuses. *See, Hyler v. Sheriff of Clark Cty.,* 93 Nev 561, 571 P2d 114 (1977) (the institution of grand jury process, during pendency of criminal complaint, did not constitute abuse of prosecutor power * * * absent evidence indicating that grand jury proceedings had been instituted *merely* to deprive defendant meaningful access to a witness); *State v. Burk,* 82 NM 466, 483 P2d 940 (1971) (after a preliminary hearing had been scheduled, prosecutor obtained an indictment; while prosecutor was zealous, he did not exceed the "bounds of propriety." "The choice was not the defendant's * * *. Defendant was attempting to force the prosecutor to a preliminary hearing against the prosecutor's wishes. The fact that the prosecutor may have maneuvered zealously to preserve the choice, which was his to exercise, does not show that he exceeded the bounds of propriety," *Id.* at 941.) *People v. Kuelper,* 46 Ill App 3d 420, 361 NE2d 29 (1977) (prosecutor avoided a preliminary hearing by obtaining an indictment and then refused a court order to participate in the preliminary hearing. Holding that a preliminary hearing would serve no legitimate purpose since probable cause had already been established by the grand jury the court found that the prosecutor was within his rights to refuse to participate).[14]

I fail to find evidence to support the defendant's contention that he was singled out, not dealt with on substantially the "same terms" as others similarly situated or was the victim of a "haphazardly" arrived at ad hoc decision or any other form of discrimination on the part of the prosecutor. On the contrary, the witnesses for the state explained in some detail the manner upon which the prosecutor's discretion was exercised. The Court of Appeals reversed the trial court because it concluded that we require a motive for improper discrimination. I do not believe this to be true. What should be required is prosecutorial conduct which has a discriminatory result regardless of motive. We should require proof that the defendant was singled out for selective and discriminatory treatment on the basis of activities which form an unjustified standard for

---

[14]These cases dealt with fair trial issues, but the principle involved remains the same.

selectivity * * *." *United States v. Falk,* 479 F2d 616, 622 (7th Cir 1973).

As Professor LaFave points out when discussing charging decisions:

> "A defendant bears the heavy burden of establishing, at least *prima facie,* (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights."[15]

A fair reading of the record in this case fails to disclose any evidence that the defendant was denied "equal privileges" under Oregon's constitution or equal protection under the federal constitution.

I would affirm the Court of Appeals.

---

[15]Y. Kamisar, W. LaFave, J. Israel, Modern Criminal Procedure, 943 (5th Ed 1980), quoting *United States v. Berrios,* 501 F2d 1207 (2d Cir 1974).